RICHARD TAN, SBN 327366
LAW OFFICES OF RICHARD TAN
3020 Bridgeway, Suite 192
Sausalito, CA 94965
Telephone: (510) 345-3246
Facsimile: (415) 532-1310
Email: richardtan@tutanota.com

Attorney for Plaintiffs,
KEITH H. WASHINGTON,
SAN FRANCISCO BAY VIEW
NATIONAL BLACK NEWSPAPER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

KEITH H. ("MALIK") WASHINGTON, an individual; and SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER, a California corporation,

Plaintiffs,

vs.

FEDERAL BUREAU OF PRISONS, a public agency of the United States; THE GEO GROUP, INC., a Florida corporation, dba GEO CALIFORNIA, INC.; MONICA HOOK, an individual; MARIA RICHARD, an individual; WILL GOMEZ, an individual, MURTALA LANVAL, an individual, and DOES 1 through 10, inclusive,

Defendants.

Case No.:

**VERIFIED APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**

1. First Amendment to the United States Constitution

2. Fifth Amendment to the United States Constitution

3. Art. I, § 2, California Constitution

4. Cal. Civ. Code § 52.1(b)

5. Breach of Contract

6. Conversion

**Civil Rights**

**DEMAND FOR A JURY TRIAL**

Plaintiffs, Keith H. "Malik" Washington and the San Francisco Bay View National Black Newspaper ("SF Bay View") bring this action, pursuant to the First and Fifth Amendments to the United States Constitution, Article I, section 2 of the California Constitution, California Civil Code section 52.1(b), the Administrative Procedure Act, and the Declaratory Judgment Act, to obtain injunctive and declaratory relief restraining the unlawful retaliation against, and censorship of, Mr. Washington at the Taylor Street Facility, located in San Francisco, California.

Plaintiffs allege as follows:

**INTRODUCTION**

1. This First Amended Complaint is being filed, on an emergency basis, because of additional acts of retaliation by defendants, the Federal Bureau of Prisons and the GEO Group, Inc. against Plaintiff, Keith H. "Malik" Washington. These additional, outrageous acts of retaliation, commencing on February 4, 2021, took place immediately after, and in direct response to, Plaintiffs' filing of their original complaint on February 1, 2021 and the press conference held afterwards on February 2, 2021. In addition to the previous retaliatory acts alleged in the original complaint, defendants have now also retaliated against Plaintiffs' First and Fifth Amendment rights of access to the courts.

2. Plaintiffs request immediate relief from this Honorable Court to restore the status quo and prohibit any further retaliation against Plaintiffs Washington and the San Francisco Bay View – retaliation which could lead to Plaintiff Washington losing his job, being involuntarily and illegally transferred out of his current residence at the Taylor Street Center into jail, and irreparable economic harm to the San Francisco Bay View National Black Newspaper.

3. Following the filing of the original complaint on February 1, 2021, defendants "discovered" additional conduct by Plaintiff Washington from back in December, 2020, more than two months ago, and used that conduct as the pretext

for additional disciplinary charges against him. Plaintiff Washington was never disciplined for this conduct until after the complaint in this case was filed and a press conference took place. Defendants also made a phone call to the San Francisco Bay View on February 3, 2021 which show that they were engaged in a fishing expedition, deliberately targeting Plaintiff Washington to find any and all possible charges which could be brought against him.

4.      The new retaliation in this case is discussed chronologically after the previous background, in paragraphs 66-82.

5.      Shortly before January 8, 2021, a COVID-19 outbreak began at the Taylor Street Center located in the Tenderloin, in the heart of San Francisco – an outbreak which, as of this writing, is still ongoing. Because Plaintiff, Keith H. "Malik" Washington, exposed this outbreak in his role as Editor-in-Chief of Plaintiff, the San Francisco Bay View National Black Newspaper ("SF Bay View"), Mr. Washington was retaliated against by the Federal Bureau of Prisons ("BOP"), acting through their contractor, the GEO Group, Inc. ("GEO Group"). Mr. Washington and the SF Bay View seek relief from this Court to vindicate their free speech rights.

6.      The Taylor Street Center is a private prison facility operated by the GEO Group. It is a Residential Reentry Center - a minimum security facility without cells, bars or armed prison guards. Such centers facilitate prisoners' reentry into society by placing them in a transitional situation, in which they can seek gainful employment and integrate into the wider community.

7.      Mr. Washington was transferred to the Taylor Street Center in September 2020, when he entered pre-release status on his federal sentence. As part of his pre-release, he is authorized to work as a journalist and editor of the SF Bay View, the most visited Black newspaper on the internet. When a non-confidential memo concerning the outbreak was circulated to facility residents, Mr. Washington publicized and covered the developing outbreak – an outbreak which GEO Group

denied.

8. For doing so, and for filing this lawsuit, he was punished by defendants.

**JURISDICTION AND VENUE**

9. This action arises under the First and Fifth Amendments of the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, 706. This Court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (claims arising under the U.S. Constitution), 5 U.S.C. § 702 and 706, and, to the extent the claims seek declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (e)(1) respectively, because defendants are located in the Northern District of California, because a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of California, and because this action is brought against the Federal Bureau of Prisons, a public agency of the United States Government within the Department of Justice.

**PARTIES**

11. Plaintiff, Keith H. ("Malik") Washington, an individual, is and at all times relevant hereto was, a nationally recognized print and radio journalist, a member of the California News Publishers Association, and the Editor-in-Chief of Plaintiff San Francisco Bay View National Black Newspaper ("SF Bay View"). At all times material therein, Plaintiff Washington was acting as a journalist within the course and scope of his employment as Editor-in-Chief of Plaintiff SF Bay View.

12. Mr. Washington began his career as a freelance journalist in 2012 while incarcerated on state charges in Texas, writing on prison issues, environmental abuses by petrochemical companies, and the connections between these issues and capitalism. He has written for, and been interviewed by, VICE Magazine, Al Jazeera,

Democracy Now, the Final Call and the Black Agenda Report. He also works as a radio journalist, with regular segments on Workweek Radio and Prison Focus Radio on KPOO. Plainitff Washington attended Morgan State University in Baltimore, and served his country for eight years as a combat medic in the United States Army, with a rank of Corporal (E-4). He received a General Discharge Under Honorable Conditions in 1988.

13. Plaintiff Washington is presently under the custody of Defendant Federal Bureau of Prisons and has been on a duly-authorized "work-release" program as part of his "pre-release" status since September 3, 2020. He is scheduled to be released from custody on May 31, 2021. Pursuant to Plaintiff Washington's "work-release" program, he resides at the Taylor Street Residential Reentry Center at 111 Taylor Street, San Francisco, California. The Taylor Street Center is located in the Tenderloin District of San Francisco, a neighborhood in downtown San Francisco where many poor people, including many homeless persons, reside.

14. As an integral part of his "work-release" program, Plaintiff Washington is authorized to leave the Taylor Street facility at 7:00 a.m. every morning, Mondays through Saturdays, to carry out his Editor-in-Chief duties at the offices of Plaintiff S.F. Bay View in the Bayview-Hunters Point District of San Francisco, and is required to return to said facility by 8:00 pm each evening.

15. Plaintiff Washington's duties as Editor-in-Chief include processing and routing, when appropriate, emails which the SF Bay View receives to the appropriate staff person to process. The SF Bay View receives approximately 500 emails a day. The Editor-in-Chief has to read these emails, determine if a response is appropriate, and forward the email to the staff person who can respond or act on the email. Plainitff Washington performs this function both at work and after hours, following his return to the Taylor Street Center in the evenings, on his cell phone.

16. Plaintiff Washington's duties as Editor-in-Chief also include developing and writing stories and story ideas.

17.     A crucial component of Plaintiff Washington's duties as Editor-in-Chief is building relationships with other reporters, news editors and organizations in the community. This includes developing story ideas, research and investigation collaboratively with other members of the journalistic community, both in the Bay Area and nationally.

18.     Plaintiff Washington's duties as Editor-in-Chief require him to be in regular contact with the public, journalists and news media. As a consequence, Defendant Federal Bureau of Prisons ("BOP") and Defendant the GEO Group, Inc. ("GEO") placed no restrictions on such contact prior to the events which commenced on January 8, 2021, as hereinafter alleged.

19.     Plaintiff, the San Francisco Bay View National Black Newspaper ("SF Bay View"), is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of California. Plaintiff SF Bay View publishes a print and electronic edition of a newspaper whose purpose is to serve as a communications network for the Black communities in the United States and through the world to aid them in building unity and achieving justice. The print edition of the newspaper is distributed for free throughout the San Francisco Bay Area and is mailed to subscribers, including thousands of prisoners through the United States. The electronic edition of the newspaper, available on said Plaintiff's website, www.sfbayview.com, is the most visited Black newspaper website on the internet. Plaintiff SF Bay View has existed and has published a newspaper since 1976.

20.     Defendant, the Federal Bureau of Prisons ("BOP") is the federal government agency within the United States Department of Justice responsible for administering all federal correctional institutions, including the Taylor Street Residential Reentry Center, pursuant to 18 U.S.C. § 4042. At all times herein material there is, and was, a written contract between Defendant BOP and Defendant The GEO Group, Inc., dba GEO California, Inc. ("GEO"), identified as Contract #DJB200264, whereby GEO was and is to administer and supervise the

Taylor Street Residential Reentry Center on behalf of Defendant BOP. Defendant BOP is, and was, responsible for ensuring that Defendant GEO complies with BOP's regulations, policies and practices, and the Constitution and laws of the United States of America and the State of California.

21. According to the webpage of Defendant BOP[1]:

> "The BOP contracts with residential reentry centers (RRCs), also known as halfway houses, to provide assistance to inmates who are nearing release. RRCs provide a safe, structured, supervised environment . . . RRCs help inmates gradually rebuild their ties to the community and facilitate supervising ex-offenders' activities during this readjustment phase."

Such reentry centers, like the Taylor Street Residential Reentry Center, are minimum security settings, without cells, bars or armed prison guards, in which the residents are intentionally placed in a transitional situation, the purpose of which is for them to learn to take personal responsibility for their conduct, to respect the rights of others, and to exercise their own civil and human rights in a proper manner so as to facilitate their reentry into society. References to "BOP" include both BOP and its current and former agents.

22. Defendant The GEO Group, Inc., dba GEO California, Inc. (hereinafter "GEO") is, and at all times relevant hereto was, a corporation organized and existing under the laws of the State of Florida, doing business within the State of California and within the Northern District of California under the fictitious business name "GEO California, Inc.," and contracting with Defendant BOP, under a written contract identified as Contract #DJB200264, to administer and supervise the Taylor Street Residential Reentry Center and its employees and residents.

23. At all times herein material, Defendant GEO is and was responsible for implementing, enforcing, and complying with the policies and practices of Defendant

---

[1] https://www.bop.gov/about/facilities/residential_reentry_management_centers.jsp

BOP. At all times herein material, Defendant GEO was responsible for hiring, training, supervising and disciplining its agents and employees, and insuring their compliance with its contract with Defendant BOP, the policies and practices of Defendant BOP, and the Constitution and laws of the United States of America and the State of California.

24. At all times herein material, Defendant GEO has acknowledged, and continues to acknowledge, its responsibility to respect the human rights, including but not limited to the right to freedom of speech, of the residents of its residential reentry centers, such as the Taylor Street Residential Reentry Center, as set forth in Defendant GEO's "Global Human Rights Policy" which states, *inter alia*, that said Defendant assures its "continuing compliance with the rule of law and respect for the human rights of those in our care and custody" and further acknowledges that "the principles enunciated in this policy . . . have been informed by reference to such third-party international organizations as the United Nations and such instruments as its Universal Declaration on Human Rights . . ."

25. Article 19 of the Universal Declaration on Human Rights states:

> "Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers."

26. Plaintiffs are informed and believe, and thereon allege, that Defendant BOP, in entering into its contract with Defendant GEO with respect to the Taylor Street Residential Reentry Center, relied in part on Defendant GEO's commitment to respect the human rights of those in its care and custody, and that, therefore, Defendant GEO's "Global Human Rights Policy" is an implied covenant of said contract.

27. Defendant Monica Hook (hereinafter "Hook"), an individual, is and at all times relevant hereto was, employed as Vice President for Communications at the Taylor Street Residential Reentry Center by Defendant GEO and, at all such times,

was acting within the course and scope of said employment. Said Defendant is sued in her individual and official capacity herein.

28.    Defendant Maria Richard (hereinafter "Richard"), an individual, is and at all times relevant hereto was, employed as Facility Director at the Taylor Street Residential Reentry Center by Defendant GEO and, at all such times, was acting within the course and scope of said employment. Said Defendant is sued in her individual and official capacity herein.

29.    Defendant Will Gomez (hereinafter "Gomez"), an individual, is and at all times relevant hereto was, employed as Case Manager at the Taylor Street Residential Reentry Center by Defendant GEO and, at all such times, was acting within the course and scope of said employment. Said Defendant is sued in his individual and official capacity herein.

30.    Defendant Murtala Lanval (hereinafter "Lanval"), an individual, is and at all times relevant was, employed as Job Developer at the Taylor Street Residential

31.    The true names and capacities of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs who sue said Defendants by the aforesaid fictitious names. Upon ascertaining the true names and capacities of these fictitiously-named Defendants, Plaintiffs will amend this Complaint, or seek leave to do so, to substitute the same for their fictitious names. Plaintiffs are informed and believe and thereon allege that each DOE Defendant is in some manner legally responsible for the unlawful conduct alleged herein and the injuries complained of herein.

32.    Plaintiffs are informed and believe, and thereon allege that, at all times material herein, each Defendant was acting as the employee, agent, representative, officer, co-joint venturer, and co-conspirator of each remaining co-defendant and, at all such times, was acting within the course and scope of said employment, agency, representation, office, joint venture, and conspiracy.

**GENERAL ALLEGATIONS**

33.     On January 8, 2021, Plaintiff Washington learned of an outbreak of the Covid-19 pandemic at the Taylor Street Residential Reentry Center – an outbreak which is still ongoing, as of this writing. Plaintiff Washington learned of the outbreak from a non-confidential memorandum concerning the same which was co-authored by Defendant Richard, distributed to residents of said facility that day by employees of Defendant GEO, and which was the first notice of the outbreak provided to facility residents. Said non-confidential memo stated, in pertinent part, as follows:

> "We have had a few residents and staff who have recently tested positive for the Covid-19. We have no way of knowing how big [o]r small an outbreak is so we need to take necessary precautions."

34.     A true and correct copy of the aforesaid memorandum is attached hereto as Exhibit "A" and incorporated herein by reference.

35.     Plaintiffs are informed and believe, and thereon allege, that some time prior to January 8, 2021, Defendant GEO and Defendants Hook, Richards, Gomez, and DOES 1 through 10 inclusive, knew that residents and/or staff at the Taylor Street Residential Reentry Center had tested positive for COVID-19.

36.     On January 8, 2021, at 10:57 a.m., Mary Ratcliff, Co-Founder of Plaintiff S.F. Bay View, emailed Plaintiff Washington's case manager at Taylor Residential Reentry Center, Belief Iruayenama, to request permission for Plaintiff Washington to attend a press conference concerning allegations of racism in the San Francisco Health Service System on January 11, 2021, from 12 noon to 1:00 pm. The press conference was not related in any way to the Covid-19 outbreak at the Taylor Residential Reentry Center. Ms. Iruayenama provided the following response by email at 12:29 pm that same day:

> "It's fine, he already has a pass for work that day. So he can go for the Press conference since its in line with his job and its within his work hours."

37.     At 9:45 p.m. on January 8, 2021, Plaintiff Washington sent a text message to San Francisco journalist Tim Redmond, founder of an independent internet news site, "48 Hills.org," and the past executive editor of the San Francisco Bay Guardian, an alternative newspaper in the Bay Area. The text stated: "COVID outbreak here, Tim." Mr. Redmond texted back: "Whoa, can I call you in am?"

38.     On January 9, 2021, Defendant GEO placed the Taylor Street Residential Reentry Center on lockdown. The common areas of the facility were closed. Residents were confined to their rooms and only permitted to leave their rooms to pick up meals.

39.     In the morning of January 9, 2021, Plaintiff Washington and journalist Tim Redmond spoke by telephone concerning the pandemic outbreak at the Taylor Street Residential Reentry Center. In the afternoon of January 9, 2021, a copy of the January 8 memorandum of Defendant GEO concerning the outbreak was posted publicly on Twitter. Plaintiff Washington saw the posting and sent a link to it to Mr. Redmond.

40.     In the late afternoon of January 9, 2021, Nube Brown, the Managing Editor of the S.F. Bay View, issued a press release which stated, in pertinent part, as follows:

> "GEO GROUP has withheld information about several staff and residents testing positive for COVID-19 at their Reentry facility located at 111 Taylor Street until last night. They have no plans to test the residents until possibly next week."

41.     At 3:58 p.m. on January 9, 2021, Tim Redmond sent an email to Defendant Richard referencing the aforesaid press release which stated, in pertinent part, as follows:

> "Can you tell me if there are currently active cases, and what's being done? Do the people who live there know who has tested positive? Are there any plans to move out of the center people who are close to the end of their probation and have jobs and a place to go?"

42.     Defendant Richard did not respond to the aforesaid email. Three hours later, however, at 6:47 p.m., Defendant Hook emailed Mr. Redmond, but provided no answers to his questions about the Covid outbreak. Instead, Defendant Hook's email stated the following:

> "Thank you for your inquiry. From whom did you receive the release and would you please forward that to me? I need some time to get the information you've requested."

43.     Mr. Redmond emailed the press release and Twitter posting to Defendant Hook in response to her request.

44.     On January 10, 2021, at 2:05 p.m., Defendant Hook emailed Mr. Redmond: "You're also using a Gmail address. With all due respect, you could be anyone." She requested confirmation of his identity. Mr. Redmond provided her with an email address at 48hills.org.

45.     On January 10, 2021, at 2:56 p.m., Defendant Hook emailed Mr. Redmond stating that,"There are currently zero staff or resident COVID cases at Taylor Street."

46.     At 3:02 p.m., Mr. Redmond emailed Defendant Hook the January 8 memorandum from the Twitter posting and asked if it was fraudulent.

47.     At approximately the same time, Defendant DOE 1, an employee of Defendant GEO, went to Plaintiff Washington's room at the Taylor Street Residential Reentry Center and showed him a text message from Defendant Richard. The text message stated that the permission previously granted him to attend the January 11, 2021 press conference was revoked. Plaintiffs do not know the true name of Defendant DOE 1.

48.     Plaintiff Washington contacted his case manager, Ms. Iruayenama, and asked why the permission was revoked. She stated that she did not know and that it was Defendant Richard who had intervened to revoke it.

49.     Between 4:15 p.m. and 4:30 p.m. on January 10, 2021, Defendant Gomez

unlawfully seized Plaintiff Washington's cell phone and his roommate's cell phone in addition to the cell phones of other residents. Defendant Gomez demanded that Plaintiff Washington give him the code to unlock his cell phone, and Plaintiff Washington provided the code. Within 15 minutes, all of the cell phones other than that belonging to Plaintiff Washington were returned to their owners. Defendant Gomez told Plaintiff Washington that he was now prohibited from using other residents' cell phones.

50. Plaintiffs are informed and believe, and thereon allege, that no search and seizure of residents' cell phones had been conducted at the Taylor Street Residential Reentry Center for at least six months prior to this incident.

51. At 5:00 pm on June 10, 2021, Defendant Gomez issued an "Incident Report" with regard to the matters hereinabove alleged.

52. A true and correct copy of said Incident Report is attached hereto and incorporated herein by reference as Exhibit "B."

53. The Incident Report charges Plaintiff Washington with violation of "Prohibited Act 327" in Defendant BOP's "Inmate Discipline Program, Program Statement 5270.9." Prohibited Act 327 is described therein as "Unauthorized Contact with the Public." The Incident Report quotes in its entirety Mr. Redmond's email from 3:58 p.m., January 9, 2021, inquiring about the Covid-19 outbreak at the Taylor Street Residential Reentry Center. The Incident Report quotes BOP's policy for institutional visits, found at 28 C.F.R. §540.62(e), which states that:

> "Interviews by reporters and others not included in $540.2 may be permitted only by special arrangement and with approval of the Warden."

54. According to the Incident Report, Defendant Gomez charged Plaintiff Washington with violating Prohibited Act 327 ("Unauthorized Contact with the Public") after finding the above-referenced email correspondence between Plaintiff and Tim Redmond on Plaintiff's cell phone during a cell phone search, and after Mr.

Redmond had emailed Defendant Richards requesting information concerning the Covid-19 outbreak at the Taylor Street Residential Reentry Center.

55.     At 6:44 p.m. on June 10, 2021, Defendant Hook telephoned Mr. Redmond and admitted during that phone conversation that, contrary to her previous email, three persons had tested positive for Covid-19 at the Taylor Street Residential Reentry Center, but claimed that they had been moved off-site. Defendant Hook asked Mr. Redmond again who had given him the information about the Covid-19 outbreak at the Taylor Street facility. Defendant Hook assured Mr. Redmond that residents of the facility were permitted to possess and use cell phones and that they had every right to communicate with the public.

56.     On January 11, 2021, Plaintiff Washington was ordered confined to his room at the Taylor Street Residential Reentry Center and barred from attending the press conference that day to which he had previously been granted permission to attend. At 11:30 a.m. he was escorted to the board room at the facility for a disciplinary meeting with Defendant Richard. Defendant Richard told Plaintiff Washington that his cell phone would be confiscated for 30 days.

57.     Defendant Richard gave Plaintiff Washington a "News Interview Authorization Form" and told him that he must fill out the form each time he wished to have any contact with a journalist or member of the press, and obtain written permission for such contact from a staff member of the Taylor Street Residential Reentry Center before having any such contact. Defendant Richard further clarified that, in order for Plaintiff Washington to have permission to have contact with a journalist or the press, authorization would have to be obtained from Washington, D.C., presumably from some top official of Defendant BOP. Defendant Richard also revoked 14 days of Plaintiff Washington's good time credits. The revocation of his good time credits delays Plaintiff Washington's earliest possible eligibility for home confinement from March 19, 2021 to April 2, 2021, and delays his release date from May 31, 2021 to June 13, 2021.

58.    During the disciplinary meeting, Defendant Richard revised the Incident Report (Exhibit "B") by adding to it, in her handwriting, a violation of Prohibited Act 297 which she describes therein as "Phone abuse."

59.    Attached hereto as Exhibit "C", and incorporated herein by reference, is a true and correct copy of the Discipline Hearing Officer (DHO) report for Mr. Washington's discipline, Report No. 3466318, containing a copy of the revised incident report.

60.    Prohibited Act 297 prohibits: "Use of the telephone for abuses . . . which circumvent the ability of staff to monitor frequency of telephone use, content of the call, or the number called." Defendant Richard concluded the disciplinary meeting by telling Plaintiff Washington that, if he had "kept everything quiet" about the Covid-19 outbreak at the Taylor Street Residential Reentry Center, he would not have been disciplined.

61.    Plaintiff Washington was the only resident charged with violation of Prohibited Act 297 ("Phone Abuse") out of all the residents whose phones were the subject of the above alleged search and seizure.

62.    On January 17, 2021, Defendant GEO provided Plaintiff Washington with a copy of the Unit Discipline Committee report concerning the hereinabove-alleged incident. On January 21, 2021, Plaintiff Washington duly submitted a BP-9 "Request for Administrative Remedy" to Defendant GEO. As of this writing, he has not received a response to the BP-9.

63.    Journalist Tim Redmond published two articles online concerning the Covid-19 outbreak at the Taylor Street Residential Reentry Center. On January 11, 2021, Mr. Redmond published online, "Covid Outbreak – and Media Crackdown – – at Private Halfway House in Tenderloin" (https://48hills.org/2021/01/covid-outbreak-and-media-crackdown-at-private-halfway-house-in-tenderloin/).On January 17, 2021, Mr. Redmond published online, "Bay View Editor May Take Legal Action Against Private Prison Company" (https://48hills.org/2021/01/bayview-

editor-may-take-legal-action-against-private-prison-company/).

64.     As of the date of filing of this Complaint, Defendant BOP has acknowledged on its website that five residents at the Taylor Street Residential Reentry Center have contracted the Covid-19 virus, with two of them having recovered (https://www.bop.gov/coronavirus/).

65.     By reason of the conduct and actions of each Defendant, as herein alleged, Plaintiffs have had to retain the professional services of attorneys to vindicate their rights and remedy their damages and are entitled to an award of reasonable attorneys' fees against said Defendants upon favorable adjudication or settlement of this litigation.

## ADDITIONAL ALLEGATIONS REGARDING RETALIATORY ACTS OF FEBRUARY 4, 2021

66.     The original complaint in this matter was filed on Monday, February 1, 2021. On Tuesday, February 2, 2021, a press conference was held announcing the filing of the lawsuit. The press conference was broadcast from the SF Bay View offices on Zoom. Plaintiff Washington was present for work at the offices of the SF Bay View, attended the press conference, and spoke during the press conference.

67.     At no point during this press conference did Plaintiff Washington mention any employees of BOP or the GEO Group by name, nor did Plaintiff Washington discuss the specifics of any retaliatory acts directed against him.

68.     The day after the press conference, on February 3, 2021, Mary Ratcliff, the co-founder of the SF Bay View, received a phone call from Defendant Lanval. Defendant Lanval asked Ms. Ratcliff where Plaintiff Washington was when the press conference took place. Ms. Ratcliff stated that Plaintiff Washington was at the SF Bay View offices during the entirety of the press conference.

69.     Defendant Lanval then asked Ms. Ratcliff about Mr. Washington's attendance at a press conference which took place at UC Hastings. Ms. Ratcliff responded that UC Hastings was located in the Tenderloin, almost right round the

corner from the Taylor Street Center. Ms. Ratcliff then ended the conversation.

70. Plaintiffs are informed and believe, and thereon allege, that Defendant Lanval was instructed, immediately following the press conference on February 2, 2021, to identify additional incidents for which Plaintiff Washington could be subject to BOP discipline.

71. Plaintiffs are informed and believe, and thereon allege, that following the press conference on February 2, 2021, defendants, or some subgrouping of them, including named defendants Monica Hook, Maria Richard and Will Gomez, determined to discipline Plaintiff Washington in retaliation for the filing of this lawsuit on February 1, and instructed Defendant Lanval to target Plaintiff Washington. Defendant Lanval then compiled a list of internet sites mentioning Plaintiff Washington in an effort to identify incidents for which he could be charged with disciplinary violations.

72. Plaintiffs are informed and believe, and thereon allege, that Defendant Lanval's investigation was undertaken solely in response to the press conference of February 2, 2021, that such investigations are not routine, and that no comparable investigations had been made by Taylor Street Center staff prior to this occasion.

73. At 8:00 p.m. on the evening of February 3, 2021, Defendant Lanval issued an Incident Report disciplining Plaintiff Washington, which was delivered to Plaintiff Washington at 6:13 p.m. on February 4, 2021.

74. Attached hereto as Exhibit "D", and incorporated herein by reference, is a true and correct copy of the Incident Report for Mr. Washington's discipline.

75. The Incident Report lists three violations: Prohibited Acts 200, 315 and 316.

76. Prohibited Act 200 is "Escape from a work detail, non-secure institution, or other non-secure confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours."

77. Prohibited Act 315 is "Participating in an unauthorized meeting or

gathering."

78. Prohibited Act 316 is "Being in an unauthorized area without staff authorization."

79. Prohibited Act 200 is a high severity prohibited act; Prohibited Acts 315 and 316 are moderate severity acts.

80. The basis for the retaliatory incident report was Defendant Murtala's "[review of] a news posting and press conference that was posted on line." The recording was apparently of a "recorded press conference and at a rally sometimes in December 2020, at the UC Hasting Campus". The Incident Report asserts that "during the 30 minutes press conference Washington mentioned GEO Taylor St. Center, identifying staff by names and referred to BOP on a number of occasions. He did not submit a request to have contact with the media or attend this meeting.

81. Plaintiff Washington's remarks at UC Hastings are posted online at https://www.youtube.com/watch?v=P-Jlmr5m s&t=1s. His remarks were 2 minutes and 50 seconds long, not 30 minutes, and he does not mention BOP or the Taylor Street Center.

82. A high severity prohibited act can result in parole date recission or retardation, disciplinary segregation, or loss of a prisoner's job.

**FIRST CLAIM FOR RELIEF**

**For Violations of the First Amendment**

**By Each Plaintiff Against Each Defendant**

61. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 60 above, as though fully set forth herein.

62. Defendants' actions, as alleged herein, constitute state action and agency action.

63. By their actions and conduct as herein alleged, each Defendant violated, and continues to violate, Plaintiffs' rights to freedom of speech and the press under

the First Amendment to the United States Constitution. These violations are actionable under 5 U.S.C. §702.

64. The conduct of each Defendant, as herein alleged, constitute adverse actions against Plaintiff Washington, carried out in retaliation for said Plaintiff's exercise of his rights under the First Amendment to the United States Constitution. Said conduct of each Defendant directly chills and bars Plaintiff Washington's exercise of his First Amendment rights without reasonably advancing a legitimate correctional goal and, furthermore, directly contradicts the correctional goal of Plaintiff's having been placed in his particular "work-release" program at the Taylor Street Residential Reentry Center.

65. The conduct of each Defendant, as herein alleged, constitute adverse actions against Plaintiff S.F. Bay View, carried out in retaliation for said Plaintiff's exercise of its rights under the First Amendment to the United States Constitution. Said conduct of each Defendant directly chills and bars Plaintiff S.F. Bay View's exercise of its First Amendment rights without reasonably advancing a legitimate state interest.

66. The conduct of each Defendant, as herein alleged, has caused and continues to cause irreparable harm to each Plaintiff's exercise of their First Amendment rights, for which there is no adequate remedy at law, and which justify the issuance of a Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, and/or Permanent Injunction.

**SECOND CLAIM FOR RELIEF**

**For Violations of the Fifth Amendment**

**By Plaintiff Washington Against All Defendants**

67. Plaintiffs hereby reassert and incorporate by reference paragraphs 1 through 60 above as though fully set forth herein.

68. By their actions and conduct as herein alleged, each Defendant deprived, and continues to deprive, Mr. Washington of a substantive liberty interest protected under the Fifth Amendment of the United States Constitution. Defendants deprived Mr. Washington of 14 days of good time credits, delaying his release date from March 31, 2021 to June 13, 2021. His earliest possible home confinement date has also been delayed, from March 19, 2021 to April 2, 2021. Plaintiff also has a substantive liberty interest in access to the courts, which defendants have interfered with through their retaliatory acts.

69. By their actions and conduct as herein alleged, each Defendant deprived, and continues to deprive, Mr. Washington of a substantive property interest protected under the Fifth Amendment of the United States Constitution. Defendants confiscated Mr. Washington's cell phone on January 10, 2021, and have impounded it for 30 days.

70. Defendants' actions cause ongoing and irreparable harm to Mr. Washington's and the SF Bay View's exercise of their constitutional rights, for which there is no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**

**For Violation of the California Constitution, Article I, section 2**
**By Each Plaintiff Against Defendants the GEO Group, Inc., dba GEO California, Inc.; Monica Hook; Maria Richard; Will Gomez; Murtala Lanval; and DOES 1 Through 10, Inclusive**

71. Plaintiffs hereby reallege and incorporate by reference paragraphs 1 through 60 above, as though fully set forth herein.

72. By their actions and conduct as herein alleged, each Defendant violated, and continues to violate, Plaintiffs' rights to freedom of speech and the press under Article I, section 2 of the California Constitution.

73. The conduct of each Defendant, as herein alleged, constitutes adverse actions against Plaintiff Washington, carried out in retaliation for said Plaintiff's exercise of his rights under Art. I, § 2 of the California Constitution. Said conduct of each Defendant directly chills and bars Plaintiff Washington's exercise of his rights under Art. I, § 2 of the California Constitution without reasonably advancing a legitimate correctional goal and, furthermore, directly contradicts the correctional goal of Plaintiff's having been placed in his particular "work-release" program at the Taylor Street Residential Reentry Center.

74. The conduct of each Defendant, as herein alleged, constitutes adverse actions against Plaintiff S.F. Bay View, carried out in retaliation for said Plaintiff's exercise of its rights under Article I, §2 of the California Constitution. Said conduct of each Defendant directly chills and bars Plaintiff S.F. Bay View's exercise of its rights under Article I, §2 of the California Constitution without reasonably advancing a legitimate state interest.

75. The conduct of each Defendant, as herein alleged, has caused and continues to cause irreparable harm to each Plaintiff's exercise of their rights under Article I, §2 of the California Constitution for which there is no adequate remedy at law and which justifies the issuance of a Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, and/or Permanent Injunction.

## FOURTH CLAIM FOR RELIEF
## For Violation of California Civil Code § 52.1(b)
## By Each Plaintiff Against Defendants The GEO Group, Inc., dba GEO California, Inc.; Monica Hook; Maria Richard; Will Gomez; Murtala Lanval; and DOES 1 through 10, inclusive

76. Plaintiffs hereby reassert and incorporate by reference paragraphs 1 through 60 above, as though fully set forth herein.

77. Defendants' actions interfered, by threats, intimidation, or coercion, with

the exercise and enjoyment by each plaintiffs of their right to freedom of speech and the press under Art. 1, § 2 of the California Constitution.

78. The conduct of each Defendant, as hereinabove alleged, has caused and continues to cause damages to each Plaintiff in an amount to be proved and, pursuant to California Civil Code §52.1(b), entitle each Plaintiff to actual damages for each offense and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages, but no less than $4,000, and reasonable attorneys' fees, under Civil Code §52(a).

79. The conduct of each Defendant, as hereinabove alleged, has caused and continues to cause ongoing and irreparable harm to Plaintiffs' exercise of their rights under Article 1, §2 of the California Constitution, for which there is no adequate remedy at law, and which justify the issuance of a Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, and/or Permanent Injunction pursuant to Civil Code §52.1(b).

80. Pursuant to Civil Code §52.1(h), this Honorable Court, in addition to any damages, injunction, or other equitable relief, may award Plaintiffs reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**For Breach of Contract**
**By Each Plaintiff Against Defendant**
**The GEO Group, Inc., dba GEO California, Inc.**

81. Plaintiffs hereby reassert and incorporate by reference paragraphs 1 through 60 above, as though fully set forth herein.

82. At all times herein material there was, and is, in full force and effect a written contract between Defendant BOP and Defendant GEO under Contract #DJB200264, whereby GEO was and is to administer and supervise the Taylor Street Residential Reentry Center on behalf of Defendant BOP.

83.     At all times herein material, Defendant GEO has acknowledged, and continues to acknowledge, its responsibility to respect the human rights, including but not limited to the right to freedom of speech, of the residents, including Plaintiff Washington, of its residential reentry centers, including the Taylor Street Residential Reentry Center, as set forth in Defendant GEO's "Global Human Rights Policy" which states, *inter alia*, that said Defendant assures its "continuing compliance with the rule of law and respect for the human rights of those in our care and custody" and further acknowledges that "the principles enunciated in this policy . . . have been informed by reference to such third-party international organizations as the United Nations and such instruments as its Universal Declaration on Human Rights . . ."

84.     Article 19 of the Universal Declaration on Human Rights states the following:

>      "Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers."

85.     Plaintiffs are informed and believe, and thereon allege, that Defendant BOP, in entering into its contract with Defendant GEO with respect to the Taylor Street Residential Reentry Center, relied in part on Defendant GEO's commitment to respect the human rights of those in its care and custody, and that, therefore, Defendant GEO's "Global Human Rights Policy" is an implied covenant of said contract.

86.     By operation of the laws of the State of California there is a Covenant of Good Faith and Fair Dealing implied in the aforesaid written contract between Defendant BOP and Defendant GEO.

87.     Plaintiff Washington, as a resident of the Taylor Street Residential Reentry Center, and Plaintiff S.F. Bay View, as the employer of Plaintiff Washington as its Editor-in-Chief as part of his "work-release" program, are foreseeable and intended third-party beneficiaries of the hereinabove-alleged written contract between Defendant

BOP and Defendant GEO.

88. The conduct of Defendant GEO, as herein alleged, constitutes a breach of the implied covenant in the aforesaid written contract between Defendant GEO and Defendant BOP, to respect the human rights, including the right to freedom of speech under Article 19 of the Universal Declaration of Human Rights, of residents of the Taylor Street Residential Reentry Center, including Plaintiff Washington. Plaintiff Washington, as a third-party beneficiary of the aforesaid contract, has suffered injuries and damages from said breach of covenant in an amount to be proved and has the right to bring this Claim for Relief. Plaintiff SF Bay View, as the employer of Plaintiff Washington, and as a third-party beneficiary of the aforesaid contract, has suffered injuries and damages from said breach of covenant in an amount to be proved and has the right to bring this Claim for Relief.

89. The conduct of Defendant GEO, as herein alleged, constitutes a breach of the Covenant of Good Faith and Fair Dealing implied by law in the aforesaid written contract between Defendant GEO and Defendant BOP. As third-party beneficiaries of the said contract, Plaintiffs Washington and SF Bay View have suffered injuries and damages from said breach of covenant, in an amount to be proved, and have the right to bring this Claim for Relief.

**SIXTH CLAIM FOR RELIEF**

**For Conversion**

**By Plaintiff Washington Against Defendants The GEO Group, Inc., dba GEO California, Inc.; Will Gomez; Maria Richard; and Does 1 through 10, inclusive**

90. Plaintiffs hereby reassert and incorporate by reference paragraphs 1 through 60 above, as though fully set forth herein.

91. At all times herein material, Plaintiff Washington was and is entitled to the possession and use of the following item of personal property, to wit: his cell

phone. At all such times the aforesaid cell phone had a value, to be proved at time of trial.

92.     On January 10, 2021 as hereinabove alleged, each Defendant unlawfully took the aforesaid cell phone from Plaintiff Washington's possession and continues to detain and withhold the same from Plaintiff and to deprive Plaintiff of his right to its possession and use, all to his damage, in an amount to be proved.

93.     Pursuant to Civil Code §3336, Plaintiff is entitled to recover the value of his personal property (said cell phone) at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify him for the loss which is the natural, reasonable and proximate result of the conversion.

94.     Plaintiff Washington, as Editor-in-Chief of Plaintiff S.F. Bay View, as an integral part of his duties in that capacity, is required to be in regular contact with journalists, publishers, newspapers, online news sites, and members of the public, and is dependent upon his cell phone for that purpose. Additionally, Plaintiff Washington's cell phone contains in its directory the contact information for journalists, publishers, newspapers, online news sites, and members of the public who are sources for news as well as articles for publication in the San Francisco Bay View. Without having his cell phone in his possession and available for his use Plaintiff is unable to properly and adequately carry out his duties as Editor-in-Chief, all to his damage, in an amount to be proved.

95.     Plaintiff Washington does not have an adequate remedy at law for the unlawful conversion of his cell phone and therefore requests equitable relief in the form of an order that the aforesaid cell phone be returned to his possession forthwith and a Declaratory Judgment prohibiting its being unlawfully taken from his possession in the future.

96.     The conduct and actions of Defendants, as herein alleged, were, and are, wilful, wanton, malicious, and oppressive, and undertaken with intent to defraud,

and justify the award of exemplary and punitive damages, in an amount to be proved.

## DECLARATORY AND INJUNCTIVE RELIEF

97.     Plaintiffs' only means of securing complete and adequate relief is to seek declaratory and injunctive relief to provide plaintiffs substantial and complete protection from defendants' unlawful policies and procedures. Remedies at law are inadequate. Plaintiffs therefore seek both legal damages and equitable remedies in the form of declaratory and injunctive relief against defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

*For the First Claim for Relief:*

1.     For a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining defendants from retaliating against Plaintiff for bringing this lawsuit.

2.     For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction mandating forthwith return to Plaintiff Washington of his cell phone; restoring Plaintiff Washington's 14 days of good time credits; restraining Defendants from enforcing any and all restrictions on Plaintiff's communicating with journalists, newspapers, online news sites, news media, and members of the public in the course of carrying out his duties as Editor-in-Chief of Plaintiff S.F. Bay View; and restraining Defendants from retaliating against Plaintiff for carrying out his aforesaid duties and bringing this lawsuit.

3.     For a Declaratory Judgment that Defendants' conduct, as hereinabove alleged, violates Plaintiff's right to freedom of speech and of the press under the First Amendment to the United States Constitution.

4.      For an award of reasonable attorneys' fees and costs of suit pursuant to 28 U.S.C. §2412(d).

5.      For such other and further relief as the Court may deem just and proper.

*For the Second Claim for Relief:*

1.      For a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining defendants from retaliating against Plaintiff for bringing this lawsuit.

2.      For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction mandating forthwith return to Plaintiff Washington of his cell phone; restoring Plaintiff Washington's 14 days of good time credits; restraining Defendants from enforcing any and all restrictions on Plaintiff's communicating with journalists, newspapers, online news sites, news media, and members of the public in the course of carrying out his duties as Editor-in-Chief of Plaintiff S.F. Bay View; and restraining Defendants from retaliating against Plaintiff for carrying out his aforesaid duties and bringing this lawsuit.

3.      For a Declaratory Judgment that Defendants' conduct, as hereinabove alleged, violates Plaintiff's liberty and property rights under the Fifth Amendment to the United States Constitution.

4.      For an award of reasonable attorneys' fees and costs of suit pursuant to 28 U.S.C. §2412(d).

5.      For such other and further relief as the Court may deem just and proper.


*For the Third Claim for Relief:*

1.      For a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining defendants from retaliating against Plaintiff for bringing this lawsuit.

2.      For a Temporary Restraining Order, Preliminary Injunction, and

Permanent Injunction mandating forthwith return to Plaintiff Washington of his cell phone; restoring Plaintiff Washington's 14 days of good time credits; restraining Defendants from enforcing any and all restrictions on Plaintiff's communicating with journalists, newspapers, online news sites, news media, and members of the public in the course of carrying out his duties as Editor-in-Chief of Plaintiff S.F. Bay View; and restraining Defendants from retaliating against Plaintiff for carrying out his aforesaid duties and bringing this lawsuit.

3.      For a Declaratory Judgment that Defendants' conduct, as hereinabove alleged, violates Plaintiff's right to freedom of speech and of the press under Article I, §2 of the California Constitution.

4.      For an award of reasonable attorneys' fees pursuant to California Code of Civil Procedure §1021.5.

5.      For costs of suit.

6.      For such other and further relief as the Court may deem just and proper.

*For the Fourth Claim for Relief:*

1.      For actual damages, in an amount to be proved.

2.      For statutory damages, in an amount to be determined by a jury, or a court sitting without a jury, to a maximum of three times the amount of actual damages, but no less than $4000 for each offense, pursuant to Civil Code §52.1(b).

3.      For a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction restraining defendants from retaliating against Plaintiff for bringing this lawsuit.

4.      For a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction mandating forthwith return to Plaintiff Washington of his cell phone; restoring Plaintiff Washington's 14 days of good time credits; restraining Defendants from enforcing any and all restrictions on Plaintiff's communicating with journalists, newspapers, online news sites, news media, and members of the public

in the course of carrying out his duties as Editor-in-Chief of Plaintiff S.F. Bay View; and restraining Defendants from retaliating against Plaintiff for carrying out his aforesaid duties and bringing this lawsuit., pursuant to Civil Code §52.1(b).

5.     For a Declaratory Judgment that Defendants' conduct, as hereinabove alleged, violates Plaintiff's right to freedom of speech and of the press under Article I, §2 of the California Constitution, pursuant to Civil Code §52.1(b).

6.     For reasonable attorneys' fees pursuant to Civil Code §52(a) and/or §52.1(h).

7.     For costs of suit.

8.     For such other and further relief as may be just and proper.

*For the Fifth Claim for Relief:*

1.     For special damages, in an amount to be proved.

2.     For general damages, in an amount to be proved.

3.     For costs of suit.

4.     For such other and further relief as may be just and proper.

*For the Sixth Claim for Relief:*

1.     For an order that Defendants return Plaintiff's cell phone to him forthwith.

2.     For special damages for the value of Plaintiff's cell phone and interest thereon from the date of its conversion in an amount to be proved, pursuant to Civil Code §3336.

3.     For special damages to indemnify Plaintiff Washington for the loss which is the natural, reasonable and proximate result of the conversion of his cell phone in an amount to be proved, pursuant to Civil Code §3336.

4.     For exemplary and punitive damages in an amount to be proved.

5.     For costs of suit.

6. For such other and further relief as may be just and proper.

Dated: February 1, 2021

**LAW OFFICES OF RICHARD TAN**

By: ______________________________
Richard Tan

Attorney for Plaintiffs
KEITH H. WASHINGTON and SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER

**VERIFICATION**

I, Keith H. Washington, declare as follows:

I am the plaintiff to this action. I have read the foregoing Verified Complaint and know its contents. The matters stated in this Verified Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on February 1, 2021, in San Francisco, California.

____*Keith H. Washington**__________
Keith H. Washington

* I, Richard Tan, am the ECF user whose identification and password are being used to file the foregoing documents. Pursuant to Civil Local Rule 5.1(i), I hereby attest that concurrence in the filing of these documents has been obtained from each of its signatories.

# Exhibit A

All residents:                                                    1/08/2021

We have had a few residents and staff who have recently tested positive for the Covid – 19. We have no way of knowing how big r small an outbreak is so we need to take necessary precautions.

#1- The facility day spaces are all closed until further notice.  Residents are restricted to their rooms.  If you leave your room without authorization or are in someone else's room you will potential will be discharged or RTC> this needs to be taken seriously.

#2- Residents will be able to come down stairs by their room# for meals only.  Staff will clear each room by room. Staff will let you know when you come down. We will be making a schedule for meals so you can plan ahead. you will grab your meal, use microwave and vending machines/ hot water   and go straight back upstairs. No eating will occur in day spaces.

#3. Working residents will be moved into rooms with working residents. Non-working will live with  non-working residents. So be prepared to move if instructed to do so. It will not be an option if you are told to move!

#4. Working residents- You can work if you have an essential Dept of Public Works job. If not, we will determine on a case-by-case basis if you can continue to work. You must be demonstration good COVID-19 precautions to keep working. Get tested monthly, wear PPE ect. You will be quarantined to your room except for signing in and out and for meals. Staff will determine when your mealtime is-- Not you. Do not demand to go into the kitchen as soon as you return. You must be patient if you want to keep working.

#5.  We will have a full facility COVID-19 test next week with all resident and all staff. On this one day you will not be able to go to work until you have been tested. I do not know what date or time yet but I will keep you informed.

 We will determine next plan after we are all tested and confirm the results. Think positive STAY negative!!

This is a difficult time but if we work together, we can get through the next week or two. If we cooperate this will be temporary!

Thank you in advance---   Jason Carpenter and  Maria Richard

# Exhibit B

BP-A0288
Jan 17
U.S. DEPARTMENT OF JUSTICE

**INCIDENT REPORT**

**FEDERAL BUREAU OF PRISONS**

**Part I - Incident Report**

| 1. Institution: 9NL Taylor Street Center | | Incident Report Number: | |
|---|---|---|---|
| 2. Inmate's Name: Washington, Keith Harry | 3. Register Number 34481-037 | 4. Date Of Incident 01/10/2021 | 5. Time 1600 |
| 6. Place Of Incident Taylor Street Admin Area | 7. Assignment Pre-Release | 8. Unit Room 232 | |
| 9. Incident: Unauthorized contact with the public | | 10. Code: 327 | |

11. Description of Incident (Date: 1/10/2021 Time:16:00 Staff become aware of incident)

At approximately 16:00 on January 10, 2021, I Case Manager Will Gomez was conducting a Cell Phone search. I confiscated Resident Washington, Keith Harry iPhone Xr. As I was searching through the photo album on the phone, there was a picture of Taylor Street Memo from January 8, 2021. I continued my search on the phone through the text messages and I found Resident Washington sent the picture of the memo mentioned above with to Tim Redmond.

Resident Washington started the conversation with "Covid outbreak here Tim" with the picture attached.
Time responded, "Whoa can I call u in am".
Resident Washington responded "Yes."
Tim replied, "Ok".
Resident Washington replied "Sorry to bother you but this was breaking news".
Tim responded "No worries will call".
Resident Washington sent the twitter link "BREAKING: COVID outbreak at SF re-entry program run by San Francisco private prison and immigration camp profiteer GEO Group" to Tim.

As per the policy of the BOP, "Interviews by reporters and others… may be permitted only be special arrangement and with approval."

Tim Redmond has proceeded to email Maria Richard asking for more information. Tim has asked, " Hi, I'm a reporter with 48hills.org, and I just got a press release about COVID at the Taylor Center. Can you tell me if there are currently active cases, and what's being done? DO the people who live there know who has tested positive?

Are there any plans to move out of the center people who are close to the end of their probation and have jobs and a place to go?

Thanks so much."

On 9/3/2020, Resident Washington signed the Cell Phone Agreement that the phone is to be used to employment purposes, family contact and contact with your non-felon friends. The agreement also says, do not record or take pictures at the facility.

Based on the above facts I, Will Gomez, with violating prohibited Act Code 327: Unauthorized contact with the public.

| 12. Typed Name/Signature Of Reporting Employee | | 13. Date And Time |
|---|---|---|
| Will Gomez [signature] | | 1/10/2021 17:00 |
| 14. Incident Report Delivered To Above Inmate By (Type Name/Signature) | 15. Date Incident Report Delivered | 16.Time Incident Report Delivered |
| Timothy Ogunlusi [handwritten] | 1/11/21 | 0736 |

# Exhibit C



**U.S. Department of Justice**

Federal Bureau of Prisons

*Residential Reentry Office*

*916.930.2010*
*916.930.2008 fax*

*Federal Building & U.S. Courthouse*
*501 I Street, Suite 9-400*
*Sacramento, CA 95814*

MEMORANDUM FOR: Washington, Keith #34481-037

FROM: Arinda, Phillips Residential Reentry Manager

SUBJECT: Your Incident Report(s)
Dated:1/10/21 Offense(s):
**Phone Abuse/Unauthorized contact with the Public.**

Attached is your copy of the Center Discipline Committee Report pertaining to the above-referenced incident. If you disagree with the findings and/or action, you may file an administrative remedy appeal to the Regional Director within twenty (20) calendar days from the date you receive this written notice of the decision.

If you have been removed from the facility and you do not have access to the appropriate appeal form, then you may write a letter to the Regional Director to file your complaint.

However, if you are to be transferred to a federal institution, it is recommended that you wait and use the administrative remedy procedure upon your arrival at the institution.

The address for the Regional Director is:

Regional Director
Federal Bureau of Prisons
7338 Shoreline Drive
Stockton, CA 95291

cc: CSC Contractor (RRC) -
Parent Institution
CSC File

**I have received a copy of this Disciplinary Bearing Report**

**Inmate Signature:** [signature]
**Date/Time: 1/17/2021**

**Witness Signature:** [signature]
**Date/Time: 1/17/2021**

**(Please note if inmate refuses to sign)**

**Please return signed copy of this form via fax or email. Fax No. 916-930-2008; email CSC-CommCorr-S@bop.gov**

IRNO 3466318

BP-A0494
JUN 10

# CHECKLIST FOR CDC CERTIFICATION

U.S. DEPARTMENT OF JUS
FEDERAL BUREAU OF PRIS

Name of Inmate Washington, Keith

Register No. 34481-037

Facility Taylor ST center 9NL

| YES | NO | N/A | | |
|---|---|---|---|---|
| | | | | **ADVANCE NOTICE OF CHARGE** |
| ☒ | ☒ | ☐ | (1) | The inmate was given advance written notice of the charge(s) against him no less than 24 hours before the appearai before the CDC. waived 24 |
| ☒ | ☐ | ☐ | (2) | If the answer to (1) is "No": (a) The inmate waived the 24-hour notice, or (b) There exists a valid reason why the 24-hour notice was not given. The reason is: waived |
| | | | | **STAFF REPRESENTATION** |
| ☐ | ☒ | ☐ | (3) | The inmate requested a staff representative and that staff representative appeared. |
| ☒ | ☐ | ☐ | (4) | The inmate did not request a staff representative and, thereby, waived the right to a staff representative. |
| ☐ | ☒ | ☐ | (5) | The inmate requested a representative who refused or was unable to appear, and the inmate chose to continue the hearing in the absence of requested representative after being advised of the option ot postpone the hearing in order obtain another representative. |
| | | | | **WITNESSES AND DOCUMENTARY EVIDENCE** |
| ☒ | ☐ | ☐ | (6) | The inmate waived the right to call witnesses. |
| ☐ | ☒ | ☐ | (7) | The inmate requested witnesses. |
| ☐ | ☐ | ☒ | | (a) The requested witnesses appeared and statements are summarized in the record. |
| ☐ | ☐ | ☒ | | (b) Reasons for not calling requested witnesses are documented in the record. |
| ☐ | ☐ | ☒ | | (c) Written statements of unavailable witnesses were submitted, considered, and included in the record. |
| ☐ | ☒ | ☐ | (8) | The inmate submitted written documentation which was considered and is included in the record. |
| ☒ | ☐ | ☐ | (9) | The inmate's statement to the CDC is summarized in the record. |
| | | | | **FINDINGS AND SPECIFIC EVIDENCE** |
| ☒ | ☐ | ☐ | (10) | The findings of the CDC are supported by a substantial factual basis. |
| ☒ | ☐ | ☐ | (11) | The specific evidence relied on is adequately documented in the record. |
| | | | | **SANCTION** |
| ☐ | ☒ | ☐ | (12) | The sanction recommended by the CDC is proportionate to the offense committed. |
| ☒ | ☐ | ☐ | (13) | The reasons for the sanction are adequately documented in the record. |
| ☒ | ☐ | ☐ | (14) | The DHO has added sanctions. |

DHO Signature [signature] Date 1/15/21

SDCD6 * INMATE DISCIPLINE * 01-15-2021
PAGE 001 OF 001 * ADD HEARING / FINDINGS * 13:22:19

REGISTER NO.. 34481-037 NAME... *WASHINGTON* REPORT NO. 3466318
FUNCTION..... ADD HEARING DATE/TM. 01-15-2021 1320 HEAR TYPE. CDC
UDC/CDC LOC.. 9NL DHO/CHAIRPERSON. SALAS A. HEAR FACL. CSC
AVAIL SGT.... AVAIL GCT....... 54 REHEARING. N
STATUS....... SANCTIONED AVAIL NVGCT..... ABSENTIA.. N
REPORT RMKS.. I/M ADMITS USING PHONE TO TAKE PICTURE OF GEO DOCUMENT.
CONTACTED MEDIA RE: COVID ISSUES AT RRC.

ACT 297 PHONE ABUSE-DISRUPT MONITORING FREQ 1 ATI. RFP
SANC DIS GCT AMT 14 / DAYS CS/CC CS SUSP CMP 030 LAW P
FROM RMK DISALLOW 14 DAYS GCT. PLRA INMATE PER PS 5270.09.
THRU

ACT 327 CONTACTING PUBLIC WITHOUT AUTH FREQ 1 ATI. RFP
SANC LP PHONE AMT 30 / DAYS CS/CC CS SUSP CMP LAW
FROM 01-15-2021 RMK 30 DAYS LOSS PHONE/CELLPHONE.
THRU 02-13-2021

ACT FREQ ATI. RFP
SANC AMT / CS/CC SUSP CMP LAW
FROM RMK
THRU

*G5460* *WARNING: AMOUNT FOR GOOD CONDUCT TIME IS BELOW LIMIT FOR ACT/FREQ*
G5465 TRANS COMPLETE; ADD MORE ACTS/SANCS TO EXISTING HEARING IF DESIRED

BP-A0288
Jan 17
U.S. DEPARTMENT OF JUSTICE

INCIDENT REPORT

FEDERAL BUREAU OF PRISONS

Part I - Incident Report

| 1. Institution: 9NL Taylor Street Center | | Incident Report Number: | |
|---|---|---|---|
| 2. Inmate's Name: Washington, Keith Harry | 3. Register Number 34481-037 | 4. Date Of Incident 01/10/2021 | 5. Time 1600 |
| 6. Place Of Incident Taylor Street Admin Area | 7. Assignment Pre-Release | 8. Unit Room 232 | |
| 9. Incident: Unauthorized contact with the public [handwritten: phone abuse] | | 10. Code: 327 / 297 | |

11. Description of Incident (Date: 1/10/2021 Time:16:00 Staff become aware of incident)

At approximately 16:00 on January 10, 2021, I Case Manager Will Gomez was conducting a Ce Phone search. I confiscated Resident Washington, Keith Harry iPhone Xr. As I was searchin through the photo album on the phone, there was a picture of Taylor Street Memo from Janu 8, 2021. I continued my search on the phone through the text messages and I found Residen Washington sent the picture of the memo mentioned above with to Tim Redmond.

Resident Washington started the conversation with "Covid outbreak here Tim" with the pict attached.
Time responded, "Whoa can I call u in am".
Resident Washington responded "Yes."
Tim replied, "Ok".
Resident Washington replied "Sorry to bother you but this was breaking news".
Tim responded "No worries will call".
Resident Washington sent the twitter link "BREAKING: COVID outbreak at SF re-entry progra run by San Francisco private prison and immigration camp profiteer GEO Group" to Tim.

As per the policy of the BOP, "Interviews by reporters and others… may be permitted only special arrangement and with approval."

Tim Redmond has proceeded to email Maria Richard asking for more information. Tim has ask " Hi, I'm a reporter with 48hills.org, and I just got a press release about COVID at the Taylor Center. Can you tell me if there are currently active cases, and what's being done DO the people who live there know who has tested positive?

Are there any plans to move out of the center people who are close to the end of their probation and have jobs and a place to go?

Thanks so much."

On 9/3/2020, Resident Washington signed the Cell Phone Agreement that the phone is to be used to employment purposes, family contact and contact with your non-felon friends. The agreement also says, do not record or take pictures at the facility.

Based on the above facts I, Will Gomez, with violating prohibited Act Code 327: Unauthor contact with the public. + 297 - phone abuse [handwritten]

| 12. Typed Name/Signature Of Reporting Employee | | 13. Date And Time |
|---|---|---|
| Will Gomez [signature] | | 1/10/2021 17:00 |
| 14. Incident Report Delivered To Above Inmate By (Type Name/Signature) [signature] | 15. Date Incident Report Delivered 1/11/21 | 16. Time Incident Report Delivered 0736 |

## Part II - CDC Action

17. Comments of Inmate to CDC Regarding Above Incident

Mr. Washington was cooperative and polite. He stated he was exercising his right to free speach. He said he has numerous friends that are reporters. M. Redmon is a friend and collegue. He gave him the information knowing he should not take pictures of Geo documents. He said he works at Bay news and his family/friends & support group are all media

18. A. It Is The Finding Of The CDC That You:

X Committed the following Prohibited Act.

_____ Do not commit a Prohibited Act.

B. _____ The CDC is referring the charge(s) to the DHO For further hearing.

C. _____ The CDC advised the offender of its finding and of the right to file an appeal within 20 calendar days

19. Committee Decision Is Based On The Following Information

Cellphone lap/top acknowledgement signed by Washington on 9/3/2020 states he can not record or take pictures. He also is aware he can not have unauthorized contact w/ media or public and discuss GEO or BOP matters. Washington knowling contacted media rep to discuss facility matter.

20. Comments Action and/or recommendation if referred to DHO (Contingent upon DHO finding inmate committed prohibited act)

Loss of phone for 30 days.

21. Date and time of action 1/11/2021 10:50am (The CDC Chairperson's signature next to name certifies who sat on the UDC that the completed report accurately reflects the CDC procedings.)

M Richard Maria Richard

Chairperson (Type Name/signature

Member (Type Name)

Member (Type Name)

BP-A0207 **NOTICE OF CENTER DISCIPLINE COMMITTEE HEARING** (CCC'S) CDFRM
JUN 10
**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Date: 01/11/21 | Facility: 111 Taylor Street |
| Inmate: Washington, Keith | Register Number: 34481-037 |
| Alleged Violation(s): Unauthorized contact with the public | |
| Date of Offense: 01/10/21 | Code Number: 327 |

You are being referred to the Center Discipline Committee for the above charges(s).

The hearing will be held on: 1/11/2021 at 11:00 (A.M./P.M.)

at the following location: 111 Taylor Street 9NL

You are entitled to have a staff member represent you at the hearing. Please indicate below whether you desire to have a staff representative, and if so, his or her name.

Inmate's Initials ☐ I (do) wish to have a staff representative.

Inmate's Initials KW ☑ I (do not) wish to have a staff representative.

If so, the staff representative's name is:

You will also have the right to call witnesses at the hearing and to present documentary evidence in your behalf, provided calling your witnesses will not jeopardize Center safety. Names of witnesses you wish to call should be listed below.

Inmate's Initials: KW Briefly state what each proposed witness would be able to testify to.

| Name: | Can Testify to: |
|---|---|
| | |
| | |
| | |

The Chairman of the Center Discipline Committee will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by him/her to be necessary for an appreciation of the circumstances surrounding the charge(s). Repetitive witnesses need not to be called. Unavailable witnesses may be asked to submit written statements.

Date, sign, and return this form to the Chairman of the Center Discipline Committee.

| Date | Inmate Signature/Reg. No. | |
|---|---|---|
| 01/11/21 | [signature] | 34481-037 |

Notice of hearing given to inmate by: Employee Signature [signature] Timothy T. Ogunbowale | Date 01/11/21

PDF Prescribed by P7331

BP-A0206 **INMATE RIGHTS AT CENTER DISCIPLINE COMMITTEE HEARING (RRC'S)** CDFRM
JUN 10

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISONS**

Taylor Street Center
Facility

As an inmate charged with a violation of Center rules or regulations referred to the Discipline Committee for disposition ,you have the following rights:

1. The right to have a written copy of the charge(s) against you at least 24 hours prior to appearing before the Center Discipline Committee;
2. The right to have a member of the staff who is reasonably available represent you before the Center Discipline Committee;
3. The right to call witnesses and present documentary evidence in your behalf, provided Center safety would not be jeopardized;
4. The right to remain silent. Your silence may be used to draw an adverse inference against you. However, your silence alone may not be used to support a finding that you committed a prohibited act;
5. The right to be present throughout the Center Discipline Committee hearing except during Committee deliberations and except where Center safety would be jeopardized;
6. The right to be advised of the Center Discipline Committee recommendation and Bureau of Prisons' decision, the facts supporting the recommendation and decision, except where Center safety would be jeopardized, and the disposition in writing; and,
7. The right to contest under Administrative Remedy procedures or by letter the Bureau of Prisons' decision to the Regional Director within 20 days of notice of the decision and disposition.

I hereby acknowledge that I have been advised of the above rights afforded me at a Center Discipline Committee hearing.

Signed: [signature] Reg. No.: 34481-037 Date: 01/11/21

Notice of rights given to Inmate on 01/11/21 (Date) by Timilehin Tope Ogunlusi (Employee Signature)

**INMATE RIGHTS AT CENTER DISCIPLINE COMMITTEE HEARING (RRC's)**

______________________
Facility

When an inmate has been advised of the rights afforded at a Center Discipline hearing, but refuses to sign the acknowledgment, the following should be completed.

I have personally advised ______________________ (Inmate's name and Register No.) of the above rights afforded at a Center Discipline Committee hearing, however, the inmate refused to sign the acknowledgment.

Signed: ______________________

______________________
(Employee's Typed Name)

______________________
(Date)

## WAIVER OF 24 HOUR NOTICE

I have been advised that I have the right to have a written copy of the charges(s) against me at least 24 hours prior to appearing before the Center Discipline Committee. I wish to waive this right and proceed with the Center Discipline Committee hearing at this time.

| Signed by Inmate | Inmate Typed or Printed Name | Register No. |
|---|---|---|
| [signature] | Washington, Keith | 34481-037 |
| Date and Time Inmate Signed | Witnessed by (Employee Signature) | |
| 1/11/21 0740 | [signature] Timjlehin Ogunlosi | |

PDF

Prescribed by P7331

BP-A0288
JUN 10

CENTER DISCIPLINE COMMITTEE REPORT (CDC'S)

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| Name of Inmate | Register Number | Hearing Date |
|---|---|---|
| Washington, Keith | 34481-037 | 1/11/21 |
| **Date of Incident** | **Date of Incident Report** | **Prohibited Act(s) Code** |
| 1/10/2021 | 1/10/21 | 327/299 |

Summary of Charge(s) Unauthorized contact w/ the public

**I. NOTICE OF CHARGE(S)** 1/5/21 Date ASAVE [illegible] Typed Name/Signature DHO

A. Advance written notice of charges (copy of incident report) was given to inmate on 1/11/2021 (Date) at 0736 (Time) by Timilehin Ogunlusi

B. The CDC Hearing was held on 1/11/2021 (Date) at 10:00 am (Time) (Waived 24h

C. The inmate was advised of his rights before this CDC by Timilehin Ogunlusi on 1/11/2021 (Date) and a copy of the advisement of rights form is attached.

**II. STAFF REPRESENTATIVE**

A. Inmate waived right to staff representative: ☒ Yes ☐ No ☐ N/A

B. Inmate requested staff representative and ______ appeared.

C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that

**III. PRESENTATION OF EVIDENCE**

A. Inmate has been advised of his right to present a statement or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf at the hearing.

Inmate admits/denies the charge(s). He stated he was exercising his right to free speech and to contact media. He stated he knew he couldn't take a picture of Geo

Admits act but denies it should be IR

Summary of Inmate Statement: form. He said his support & family are all reporters & media. Tim Redmond is a friend. Not just a reporter. He said he would abide by phone rules but would be appealing

C. Witnesses:

1. The inmate requested witnesses: ☐ Yes ☒ No
2. The following persons were called as witnesses at this hearing and appeared:
3. A summary of testimony of each is attached: ☐ Yes ☐ No ☒ N/A
4. The following persons requested were not called for the reason(s) given:
5. Unavailable witnesses were requested to submit written statements and those statements were considered: ☐ Yes ☐ No ☒ N/A

D. Documentary Evidence: In addition to the Incident Report and Investigation, the Committee considered the following documents: Phone records / Cell phone rules signed by Washington

E. Confidential information was considered by the CDC and not provided to inmate
☐ Yes ☒ No ☐ N/A

BP-E208 (Continued)

**IV. FINDINGS OF THE COMMITTEE**

[X] a. The act was committed as charged.

[ ] b. The following act was committed: ______

[ ] c. No prohibited act was committed: Expunge according to your Statement of Work.

**V. SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS**

Reviewed phone records
Reviewed phone rules signed by Washington
It is evident Washington sent info to reporter regarding facility information without authorizatio

**VI. SANCTION RECOMMENDATION**

Loss of phone for 30 days—

**VII. REASON FOR SANCTION RECOMMENDATION**

It is evident Mr. Washington broke a rule and will be accountable for contacting unauthorized public.

**VIII. APPEAL RIGHTS**

The inmate has been advised of the findings, specific evidence relied on, action and reasons for the action. The inmate has been advised of his right t appeal under the Administrative Remedy Procedure or by letter within 20 days of the imposition of the sanction to the Regional Director. A copy of this report has been given to the inmate.

**IX. DISCIPLINE COMMITTEE**

| Chairperson | Member | Member |
|---|---|---|
| M Richard Manc Richd | | |

**X. ACTION BY DHO**

DISALLOW MDA CBCR, 30 DAYS LOSS PHONE/ CELLPHONES.

______ Typed Name/Signature - DHO ______ Date

PDF Prescribed by P7331

BREAKING: COVID outbreak at SF re-entry program run by San Francisco private prison and immigration camp profiteer GEO Group. @laura_waxee @joegarofoli @idamoj @TheBestNuala #FreeThemAll
Julien Ball

1/10/2021 Mail - Maria Richard - Outlook

Friday 9:45 PM

Covid outbreak here

https://outlook.office.com/mail/inbox/id/AAQkAGNmZjZlYjQ0LTVhYjAtNGFmNi1hMzJmLWQzOTEwZDNiOGExNgAQAHZp1RZaNyVMuql2z%2BY5CXE%3D/sxs/AAMkAGNmZjZlYjQ0LTVhYjAtNGFmNi... 1/2

**Exhibit D**

BP-A0288
Jan 17
U.S. DEPARTMENT OF JUSTICE

**INCIDENT REPORT**

**FEDERAL BUREAU OF PRISONS**

**Part I - Incident Report**

| 1. Institution: 9NL Taylor Street Center | | Incident Report Number: | |
|---|---|---|---|
| 2. Inmate's Name: Washington, Keith | 3. Register Number 34481-037 | 4. Date of Incident- 01/27/2021 | 5. Time 0630hrs |
| 6. Place of Incident Outside the Facility | 7. Assignment Pre-Release | 8. Unit 232 | |
| 9. Incident: Escape from work detail, non-secure institution, or other non-secure confinement, including community confinement; with subsequent voluntary return to Bureau of prisons custody within four hours. Participating in an unauthorized meeting or gathering. Unauthorized contacts with the public. | | 10. Codes:200, 315 & 316 | |

11. Description of Incident Date: 01/27/2021 Time:0630hrs: Escape from work detail, non-secure institution, or other non-secure confinement, including community confinement; with subsequent voluntary return to Bureau of prisons custody within four hours. Participating in an unauthorized meeting or gathering. Unauthorized contacts with the public.

On Wednesday February 3rd, 2021, Job developer Lanval Murtala reviewed news posting and press conference that was posted on line. It identified inmate Washington, Keith Reg#34481-037 in a recorded press conference and at a rally sometimes in December 2020, at the UC Hasting Campus, which he was not authorized to do. According to his control sheets, he signed out on several days to go to work at S.F. Bay Newspaper with varying return time. Inmate Washington, Keith Reg#34481-037 was informed during orientation about accountability; to be at the specific location signed on the DAR (Daily Accountability Report). He acknowledged and signed the document. He did not have permission to leave his work site. He did not have permission to attend a press conference. Washington was informed on 1/13/2021 all press conference's must be approved in advance by BOP. He was also informed any media contact addressing BOP or GEO facility would need permission from BOP Central Office. His employer was provided this information as well. During the 30 minutes press conference Washington mentioned GEO Taylor St. Center, identifying staff by names and referred to BOP on a number of occasions. He did not submit a request to have contact with the media or attend this meeting.

Based on this Job Developer Murtala Lanval is citing inmate Washington, Keith Reg#34481-037 with violation prohibited act code 200: Escape from work detail, non-secure institution, or other non-secure confinement, including community confinement; with subsequent voluntary return to Bureau of prisons custody within four hours. Code 315: Participating in an unauthorized meeting or gathering. Code 316: Unauthorized contacts with the public.

| 12. Typed Name/Signature of Reporting Employee<br>Murtala Lanval [signature] | | 13. Date and Time<br>02/03/2021 2000hrs |
|---|---|---|
| 14. Incident Report Delivered to Above Inmate By (Type Name/Signature)<br>Adebimpe Ishmail [signature] | 15. Date Incident Report Delivered<br>2/4/2021 | 16.Time Incident Report Delivered<br>1813 |