**DAVID L. ANDERSON (CABN 149604)**
United States Attorney
**SARA WINSLOW (DCBN 457643)**
Chief, Civil Division
**CHRISTOPHER F. JEU (CABN 247865)**
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5082
    FAX: (408) 535-5066
    Email: Christopher.Jeu@usdoj.gov

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| **WASHINGTON, KEITH. AND SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER,**<br><br>         Plaintiffs,<br>**v.**<br><br><br>**FEDERAL BUREAU OF PRISONS, GEO CALIFORNIA, INC., MONICA HOOK, MARIA RICHARD AND WILL GOMEZ,**<br><br>      Defendants. | **Case No. 21-cv-00787-JST**<br><br>**Declaration of Ismael Hernandez in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction** |

**Page 1 –**    **Declaration of Ismael Hernandez in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
               *Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

I, Ismael Hernandez, hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.    I am currently employed by the United States Department of Justice, Federal Bureau of Prisons (BOP), as the Western Region Discipline Hearing Administrator (DHA) in Stockton, California.  I have been employed with the BOP since July of 1991, and have served as the Western Region DHA since September 2016.  If called upon, I could and would competently testify as set forth below.

2.    My responsibilities as DHA include providing written reports concerning the operation of the Discipline Hearing Officer (DHO) program in the Western Region.  Further, I supervise all DHOs and train all newly appointed DHOs in this region.   I also examine DHO reports for accuracy and compliance with BOP policy and the requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974).   As part of my responsibilities, I supervise the DHOs assigned to conduct disciplinary hearings for federal inmates housed in BOP's Western Region, including Residential Reentry Centers, such as the Geo Group, Inc., in San Francisco, California.

3.    As part of my assigned duties, I have access to records maintained and used in the normal course and scope of BOP business, including disciplinary reports and documents, and the computerized inmate database, SENTRY.  SENTRY entries are made at or near the time that events occur and record many different types of information about inmates, including, but not limited to, their discipline history and administrative remedy filing history.

4.    In the above-styled motion, I am aware that Plaintiff, Keith Washington, Federal Register Number 34481-037, who is designated to Geo Group, Inc., in San Francisco, California, as of September 3, 2020, and is currently serving his sentence at the Taylor Street Center in San Francisco, California, is challenging the BOP's determination that he committed a violation of BOP Disciplinary Code 297, Phone Abuse - Disrupt Monitoring, and Code 327, Contacting Public without Authorization, on January 10, 2021.  I an aware that Washington is challenging other disciplinary activity as well.

5.      Washington is currently serving a twenty-four month sentence based on his 2010 conviction in the U.S. District Court for the Southern District of Texas for a supervised release violation concerning Bank Robbery, in violation of 18 U.S.C. Section 2113(A).  Washington has a projected release date of June 13, 2021, via Good Conduct Time (GCT), though it could be extended until August 19, 2021, his Full Term Release date, if Washington continues to commit disciplinary infractions.  Exhibit 1 is a true and correct copy of *Washington's Public Information Inmate Data*.

6.      The Administrative Remedy program is a three-tiered system, whereby inmates can formally file a complaint about almost any aspect of their confinement.  *See* 28 C.F.R. § 541.10, *et seq*.  First, the inmate can attempt to grieve informally (BP-8).  If the inmate is dissatisfied with the informal grievance process, he can file a complaint with the Warden (BP-9).  *Id*. at § 542.14.  The Warden then has twenty days to investigate and provide the inmate a written response, and, if necessary, may extend the response time by an additional twenty days.  *Id*. at Section § 542.15.  If the inmate is dissatisfied with the Warden's response, he has twenty days to file a Regional Administrative Remedy Appeal (BP-10).  *Id*. at § 542.15.  Once received in the Regional Office, the Regional Director has thirty days to investigate and provide the inmate a written response, and, if necessary, may extend the response time by an additional thirty days.  *Id*. at § 542.18.  If the inmate is dissatisfied with the Regional Director's response, he has thirty days to file a Central Office Administrative Remedy Appeal (BP-11).  *Id*. at § 542.15.  Once received in the Central Office, the Administrator, National Inmate Appeals, has forty days to investigate and provide the inmate a written response, and, if necessary, may extend the response time by an additional twenty days.  *Id*. at § 542.18.  After receiving the Administrator's response, the inmate has exhausted the BOP's Administrative Remedy Program.   If the inmate has not filed a complaint at all three levels and received a denial at all three levels, he has failed to exhaust his administrative remedies.

7.      Whether the BOP accepts or rejects a remedy, each remedy is assigned a six digit

number, followed by a suffix that distinguishes it as a BP-9, BP-10, or BP-11.  The suffix –F1 identifies the BP-9 level, while the suffix –R1 identifies the BP-10 level and the suffix –A1 identifies the BP-11 level.  If an inmate chooses to refile multiple times at any level, e.g. three times at the R level, the appeal will have a -R1, -R2 and –R3 version.

8.      Appeals of a decision by the DHO proceed immediately to the Regional Director (BP-10) and Central Office (BP-11) and require exhaustion only at these two levels.  *See* 28 C.F.R. § 542.14(d)(2).

9.       I have personally reviewed the Administrative Remedy logs maintained on the SENTRY computer system.  Based on my review, I have determined that Washington in the above-styled motion failed to exhaust his administrative remedies as pertains to his request to expunge Incident Report Number 3466318.  Exhibit 2 is a true and correct copy of Washington's Administrative Remedy Generalized Retrieval.

10.      The Geo Group, Inc., in San Francisco, California, adheres to a Statement of Work (SOW) that ensures it operates in a manner consistent with the mission of the BOP, as reflected, in pertinent part, in Program Statement 7300.09 CN-2, *Community Corrections Manual* (5/19/99), Chapter 5, Page 18.  Exhibit 3 is a true and correct copy of Program Statement 7300.09.  The Program Statement requires Community Corrections' staff to utilize written policy and procedure during the Community Corrections' disciplinary process.  *Id.*

11.      The SOW directs the contractor to develop a handbook, summarizing the discipline system to include the BOP prohibited acts and contractor's rules of conduct.  The offenders will be given the handbook when they first arrive as the RRC as part of the orientation program.  Exhibit 4 is a true and correct copy of the Geo Group, Inc., *Resident Handbook*.  The handbook includes rules for cell phone use, sign in/sign out procedures and disciplinary action.

12.      On September 4, 2020, Plaintiff signed a receipt of handbook form in which he explicitly stated that he had received copies of and read the Geo Group, Inc., Handbook.  He further stated that he understood any offense committed while at the Taylor Street Facility would subject him

**Page 4 -       Declaration of Ismael Hernandez in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

to sanction under the prohibited acts.  He agreed to adhere to such rules, policies and regulations. Exhibit 5 is a true and correct copy of the Geo Group, Inc. Program Rules and Regulations Signature Page.  The violation of a "condition of a community program" is a prohibited act under Code 309.  The conduct may constitute a violation of other BOP regulations or BOP Prohibited Acts.  The BOP's Prohibited Acts are set forth in 28 C.F.R. § 541.3.  Likewise, they are set forth in the BOP's *Inmate Discipline Program* (7/8/2011), Program Statement 5270.09, CN-1 ("Program Statement 5270.09").  Exhibit 6 is a true and correct copy of Program Statement 5270.09.  Under the Statement of Work, additional BOP Program Statements are applicable, including Program Statement 5270.09.  Likewise, Program Statement 1480.05 (9/21/2000), *News Media Contacts*, is applicable under the SOW.  Exhibit 7 is a true and correct copy of Program Statement 1480.05.

13.     Through the SOW, staff will prepare an incident report when there is reasonable belief that the inmate has violated BOP regulations.  In general, the reporting staff refers to BOP Prohibited Acts, which are often referred to by their Codes.  The BOP's Prohibited Acts can be overlapping, so multiple codes may apply to an incident.  Reporting staff will complete Part 1 of the Incident Report.  The incident report should then be forwarded to the appropriate investigating officer for disposition.  Staff will give each offender charged with violating a BOP prohibited act a written copy of the charge(s) against the offender, ordinarily within 24 hours of the time staff became aware of the offender's involvement in the incident.  *See also* 28 C.F.R. § 541.5(a); Program Statement (PS) 5270.09, Inmate Discipline Program (7/8/2011), Chapter 2, p. 18, as both provide language that shows how the Center Discipline Committee (CDC) hearing process for RRCs mirrors the DHO hearing process for institutions.

14.     Staff will conduct the investigation promptly unless circumstances beyond the control of the investigating officer intervene. The GEO Group, Inc. facility director will appoint an investigating officer ordinarily within 24 hours of the time the violation is reported.  Staff writing

the report may not investigate the report.  The investigator, who will complete Part III of the Incident Report, will advise the offender of the right to remain silent at all stages of the disciplinary process but that the offender's silence may be used to draw an adverse inference against the offender at any stage of the disciplinary process.  The investigator will read the charge(s) to the offender and ask for the offender's statement concerning the incident unless it appears likely that the incident may be the subject of criminal prosecution.  *See also* 28 C.F.R. § 541.5(b); PS 5270.09, Chapter 2, p. 19, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

15.     The offender may request a staff representative.  The GEO Group, Inc. will ensure that the offender has a staff representative and the CDC will arrange for the presence of the staff representative selected.  The offender may not use an attorney as a representative.  The staff representative will be available to assist the offender by speaking to witnesses and presenting favorable evidence to the CDC on the merits of the charge(s) or in extenuation or mitigation of the charge(s).  *See also* 28 C.F.R. § 541.8(d); PS 5270.09, Chapter 5, pp. 28-29, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

16.     The offender or his/her representative may request witnesses from inside or outside the RRC, where his/her presence at the hearing would not pose a threat to the security of the witness or the RRC.  *See also* 28 C.F.R. § 541.8(f); PS 5270.09, Chapter 5, pp. 30-31, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

17.     Upon completion of the investigation, the GEO Group, Inc. will delegate to one or more staff members the authority and duty to hold a formal CDC hearing upon completion of the investigation. All major infractions, that are 100 and 200-level prohibited acts, are to be processed by the CDC.

18.     In order to ensure impartiality, the CDC may not be the reporting or investigating officer

or a witness to the incident, or play any significant part in having the charges referred to the CDC. If the CDC finds at the formal hearing that an offender has committed a prohibited act, the CDC may impose dispositions and sanctions. When an alleged violation of BOP rules is serious and warrants consideration for other than what the CDC may impose, the CDC will refer the charges to the DHO. *See also* 28 C.F.R. § 541.8(a),(b); PS 5270.09, Chapter 5, p. 28, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

19.     Each offender so charged is entitled to a formal hearing before the CDC, ordinarily within three work days from the time staff became aware of the offender's involvement. The offender is entitled to be present at the formal hearing except during deliberations of the decision maker(s) or when security would be jeopardized by the offender's presence. The offender is entitled to make a statement and to present documentary evidence in the offender's own behalf. The CDC will consider all evidence presented at the hearing and will make a decision based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence. *See also* 28 C.F.R. § 541.8(e),(f); PS 5270.09, Chapter 5, pp. 29-30, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

20.     If the CDC finds a prohibited act was committed, the chairperson, will complete Part II of the incident report. The evidence relied upon, the decision, and the reasons for the recommendations will be written out in specific terms, unless doing so would jeopardize center or individual security. Under "evidence relied upon," there must be reference to the specific facts the CDC relied upon and not mere reference to the incident report that contains those facts.

21.     When sanctions are recommended to the DHO, immediately following the hearing, staff will forward the completed CDC packet to the Residential Re-entry Management (RRM) with copies placed in the offender's file. The RRM will review the CDC packet for accuracy and tracking purposes then forward to the DHO for certification. The DHO will review the CDC

packet to see if there are facts that support the charge.  If there are facts that support the charge, the DHO will look at the CDC recommendation for sanctions and impose them in accordance with BOP policy.  The CDC packet will consist of the Incident Report; Center Discipline Committee Report; Inmate Rights at Center Discipline Committee Hearing; Notice of Center Discipline Committee Hearing; and other pertinent information related to the proceedings.

22.       The CDC will give the offender a written copy of the decision and disposition upon certification from the DHO and advise the offender that he may appeal the decision directly to the Regional Office through the Administrative Remedy Process.  *See* 28 C.F.R. § 541.8 (h)(i); PS 5270.09, Chapter 5, pp. 35-37, as both provide language that shows how the CDC hearing process for RRCs mirrors the DHO hearing process for institutions.

23.       Concerning inmate discipline, the GEO Group, Inc. imposes discipline on inmates whose behavior is not in compliance with the BOP regulations as set forth in 28 C.F.R. § 541.3 and Tables 1-2 and policy as set forth in Program Statement 5270.09, *Inmate Discipline Program* (Aug. 1, 2011), pages 45-55.

## INCIDENT NUMBER 3466318

24.       On January 11, 2021, Washington received Incident Report Number 3466318, which stated the following:

> On approximately 16:00 on January 10, 2021, I Case Manager Will Gomez was conducting a cellphone search.  I confiscated Resident Washington Keith Harry iPhone Xr.  As I was searching through the photo album on the phone, there was a picture of Taylor Street Memo from January 8, 2021.  I continued my search on the phone through text messages and I found Resident Washington sent the picture of the memo mentioned above with to Tim Redmond.
>
> Resident Washington started the conversation with "Covid outbreak here Tim" with the picture attached.  Tim {sic} responded, "Who can I call u in am."  Resident Washington responded "Yes."  Tim replied, "Ok."  Resident Washington replied, "Sorry to bother you but this was breaking news."  Tim responded, "No worries will call."  Resident Washington set the twitter link "BREAKING: COVID outbreak at SF re-entry program run by San Francisco private prison and immigration camp profiteer GEO Group" to Tim.
>
> As per the policy of the BOP, "Interviews by reporters and others…may be permitted only [by] special arrangement and with approval."

**Page 8 -       Declaration of Ismael Hernandez in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

Tim Redmond has proceeded to email Maria Richard asking for more information.  Tim has asked, "Hi, I'm a reporter with 48hills.org, and I just got a press release about COVID at the Taylor Center.  Can you tell me if there are currently active cases, and what's being done.  Do the people who live there know who has tested positive?"

Are there any plans to move out of the center people who are close to the end of their probation and have jobs and a place to go?

Thanks so much."

On 9/3/2020, Resident Washington signed the Cell Phone Agreement that the phone is to be used to employment purposes, family contact and contact with your non-felon friends.  The agreement also says do not record or take pictures at the facility.

Based on the above facts, I, Will Gomez, [charge Washington] with violating prohibited act Code 327, Unauthorized Contact with the Public & 297, Phone Abuse.

Exhibit 8 is a true and correct copy of Incident Report Number 3466318.

25.     On January 11, 2021, Washington received a copy of Incident Report Number 3466318 for an alleged violation of BOP Code 327, Unauthorized Contact with the Public, and Code 297, Phone Abuse.  *See* Exhibit 8 at 1, Boxes 9-10, 14-16.  Case Manager T.T. Oguniusi, was assigned to investigate the charges on January 11, 2021.  *Id*. at 3, Boxes 22-23.  Mr. Spencer advised Washington of his right to remain silent during all stages of the disciplinary process.  *Id.*, Box 23.

26.     After ascertaining that he understood those rights, Washington elected to make a comment.  *See* Exhibit 8 at 3, Box 24.  Washington stated that the U.S. Constitution guarantees his right to exercise his first amendment right to free speech.  *Id.*  Communicating a risk of public harm to the media and to the public is his stated duty as a member of the media, as a believer in God and as a citizen of the United States of America.  *Id.*  Washington stated that he will exercise his rights.  *Id.*

27.     After completion of the investigation, Case Manager Oguniusi referred the incident report to the CDC.  *See* Exhibit 8 at 3, Box 27.

28.     Case Manager Oguniusi provided Washington with a *Notice of Center Discipline*

*Committee Hearing.*  Washington did not elect to have either a staff representative or witnesses to testify at the hearing.  Exhibit 9 is a true and correct copy of *Notice of Center Discipline Committee Hearing.*

29.     Case Manager Oguniusi also reviewed Washington's rights at the CDC hearing with him and obtained his written acknowledgment of those rights.  Exhibit 10 is a true and correct copy of the *Inmate Rights at Center Discipline Committee Hearing.*

30.     On January 11, 2021, the CDC met to consider the charges.  Exhibit 11 is a true and correct copy of the Center Discipline Committee Report for IRN 3466318 at 1, Box I(B).

31.     At the CDC hearing, Washington waived the right to a staff representative appeared and he presented no witnesses.  *See* Exhibit 11 at 1, Box II(A) & III(C).

32.     The CDC provided Washington with a right to make a statement, and he elected to make one.  *See* Exhibit 5 at 2, Box 17; *see also* Exhibit 11 at 1, Box III(B).  Washington stated he was exercising his right to free speech and to contact the media.  *Id.*  He admitted that he knew he couldn't take a picture of a GEO Group, Inc. form.  *Id.*  He indicated that his support and family are all reporters and media.  *Id.*  Per Washington, Tim Redmond was a friend and not just a reporter.  *Id.*  He said he would abide by phone rules, but he would be appealing.  *Id.*

33.     The CDC determined that Washington committed the prohibited act, BOP Code 297, Phone Abuse, and BOP Code 327, Contacting Public Without Authorization, and referred the charge to the DHO for certification of their findings. *See* Exhibit 8 at 2, Box 18A, B; *see also* Exhibit 11 at 2, Box IV.

34.     In addition to Washington's statement, the CDC based their findings, in part, on the following documentations (*see also* Exhibit 8 at 2, Box 19; *see also* Exhibit 11 at 2, Box V):

- Telephone records (*see* Exhibit 8 at 5-10); and
- Cell Phones/Laptop/Computer Equipment Requirements Memorandum.

As part of the Resident Monitor Orientation, the cell phone memorandum states in pertinent part: "Please remember having a cell phone while you are a resident at Taylor Street is a Privilege- not

a Right.  The phone is to be used for employment purposes, family contact and contact with your non-felon friends.  You may not use a cell phone to communicate with other residents of the Facility.  Do not record or take pictures at the facility.  Your phone will be confiscated if you do either…The phone is subject to search at any time and will be confiscated at any time." *See also* Exhibit 8 at 4.

35.     The CDC recommended that the DHO impose a sanction of loss of telephone privileges for thirty (30) days since the BOP prohibits such behavior.  *See* Exhibit 8 at 2, Box 20; *see also* Exhibit 11 at 2, Box VI.

36.     The CDC certified their findings on January 11, 2021, and submitted the packet to the DHO to determine whether he agreed with their recommendation.  *See* Exhibit 8 at 2, Box 21; *see also* Exhibit 11 at 2, Box IX.

37.     On January 15, 2021, the Metropolitan Correctional Center San Diego DHO J. Salas concurred in the CDC's finding and recommendation because Washington's failure to follow BOP policy regarding use of the cell phone.  He imposed a loss of fourteen (14) days of GCT, consistent with the requirements of the Prison Litigation Reform Act.

38.     On January 17, 2021, Washington received a copy of the CDC Report for Incident Report Number 3179144, certified by DHO Salas.  *See* Exhibit 11 at 2, Box X.

39.      Based on my review of this matter and my understanding of the federal prison system, I find that there is not enough evidence to support a sanction for BOP Disciplinary Code 297, Phone Abuse - Disrupt Monitoring.

40.     In my experience, a BOP Disciplinary Code 297 is generally not applied at a Residential Reentry Center without consultation from the Residential Reentry Management office.  BOP ordinarily applies this code to inmates who circumvent the ability of staff to monitor the frequency of telephone use, content of the call, or the number called in an institutional environment.  Taking a photo within the Taylor Street would violate Taylor Street's rules. Under BOP Disciplinary Code 309, it is not permissible to violate a condition of a community

program.

41.     If Washington were to utilize the Administrative Remedy Program in the manner prescribed in paragraphs seven (7) through ten (10) of this declaration, BOP would be able to conduct a fuller and more comprehensive review of Incident Report Number 3466318 through the proper statutorily-designated mechanism designed to adjudicate such grievances.

42.     In the environment of a Residential Reentry Center (RRC), an inmate who makes unauthorized contacts with the public might be subject to a Disciplinary Code 327.  This includes unauthorized contact with the media.  Likewise, an inmate may violate Program Statement 1480.05, which is concerning News Media Contacts.  As for Code 327, an inmate commits this offense when he/she fails to receive written permission to contact someone outside the institution.  For example, conducting a radio interview, phone interview, or attending a press conference may violate Disciplinary Code 327.  Likewise, attending a protest or rally may violate Disciplinary Code 327.  An inmate that contacts someone on a government phone that is not on the approved list of family and friends could qualify as a violation of this code.  If an inmate at a halfway house is permitted to have a phone for work purposes, contacting the public in a manner that would violate another policy provision could qualify as a violation of this code.

43.     Based on the information presently before me as of the executed date of this declaration and in my capacity as Western Region Discipline Hearing Administrator, if Washington utilized the Administrative Remedy Program, I would direct the reporting officer to rewrite and reserve the incident report on Washington for just a violation of BOP Disciplinary Code 327, Unauthorized Contact with the Public, as Washington used his cell phone to make unauthorized contact with a news reporter and send him a photo of a Geo Group, Inc. memorandum.

44.     In the environment of an RRC, an inmate who violates their facility's cell phone policy might also be subject to a Disciplinary Code 309.  An inmate who violates a condition of a community program and fails to follow established rules other than those set forth in furlough papers to sanction inmates for telephone abuses other than illegal activity is guilty of violating

Code 309.

45.    In the RRC environment, an inmate who violates their Residential Reentry Center's accountability policy by leaving the designated workplace without permission may be subject to various escape disciplinary codes.  For example, an inmate might be subject to a Disciplinary Code 102, Escape from Any Secure or Non-Secure Institution; or Disciplinary Code 200, Escape from a Work Detail, Non-Secure Institution, or Other Non-Secure Confinement, including community confinement, with subsequent voluntary return to Bureau of Prisons custody within four hours.

46.    In my capacity as Western Region Discipline Administrator, inmate accountability is especially important in community confinement.  If an inmate deviates from the location listed on the facility's control sheet, he is subject to inmate discipline.  As the inmate remains under the custody of the U.S. Attorney General in community confinement, plans cannot change without the written permission of the facility director or their designee, such as a member of the inmate's Unit Team.  Inmates must follow the rules and regulations of the BOP and the Geo Group, Inc., given the responsibility born by each to safeguard staff and the community.  To illustrate the seriousness with which BOP and Geo Group, Inc. enforce these regulations, Geo Group, Inc. could issue a Disciplinary Code 200 indicated he would be at the office all day and instead spend part of his work day at a luncheon at a different location other than the one listed on the control sheet.

47.    Enforcement of these disciplinary code violations is tantamount to the administration and preservation of a Residential Reentry Center's internal order and discipline, maintenance of institutional security against escape or unauthorized entry and the rehabilitation of prisoners that will soon completely transition into the public.  BOP and Geo Group, Inc. rely on the disciplinary process to promote safe, humane, cost-efficient, and appropriately secure community-based facilities while they also endeavor to provide work and other self-improvement opportunities to assist residents in becoming law-abiding citizens.  Residents that

**Page 13 -     Declaration of Ismael Hernandez in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

show contempt for the rules frustrate the mission of the BOP and Geo Group, Inc.

48.     As Western Region Discipline Administrator, it would be a concern for inmates to have too much media attention.  The inmate can obtain notoriety and influence, becoming a celebrity or an influencer amongst the inmate population.  Of course, the inmate himself can act in a disruptive manner.  Likewise, the inmate could encourage others to be disruptive.  Managing an inmate's contact with the media helps preserve a Residential Reentry Center's internal order and discipline

49.     Though I do not support the finding of Incident Report Number 3466318 based on the evidence available to me at time of this declaration's execution, I found no evidence to support that the CDC members or DHO Salas were influenced by anyone or anything outside of the disciplinary process.  The CDC members and DHO Salas were not the incident reporting officer, not a witness to any incident and played no role in referring this case for a disciplinary hearing.

50.     My understanding is that Plaintiffs have challenged an Incident Report that issued in February 2021.  Based on the posture of this judicial litigation, the CDC has yet not conducted a hearing.  Likewise, the DHO has not conducted his review.  Accordingly, I do not provide a specific finding regarding this incident report.

51.     DHO Salas was both trained and certified in his capacity as a DHO, and he was authorized to perform his respective role in the disciplinary process.

52.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief.  The documents attached hereto are true and accurate to the best of my knowledge, and are provided and maintained in the ordinary course of business by the BOP.

Executed on this 16th day of February 2021, at Stockton, California.

_____
Ismael Hernandez
Discipline Hearing Administrator
BOP's Western Regional Office

**Page 14 -      Declaration of Ismael Hernandez in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST