DAVID L. ANDERSON (CABN 149604)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
CHRISTOPHER F. JEU (CABN 247865)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5082
    FAX: (408) 535-5066
    Email: Christopher.Jeu@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| KEITH H. ("MALIK") WASHINGTON AND SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER,<br><br>    Plaintiffs,<br>v.<br><br>FEDERAL BUREAU OF PRISONS, THE GEO GROUP, INC., DBA GEO CALIFORNIA, INC., MONICA HOOK, MARIA RICHARD, WILL GOMEZ, MURTALA LANVAL, AND DOES 1 THROUGH 10, INCLUSIVE,<br><br>    Defendants. | Case No. 21-cv-00787-JST<br><br>Declaration of Maria Richard in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction |

I, Maria Richard, hereby make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1. I am currently employed by the Geo Group, Inc. as the Facility Director for their Taylor Street Facility in San Francisco, California. Though the Taylor Street Facility location has changed management, I have worked for this location since January 2000. From 2000-2004, I worked as the Mother and Infant Coordinator. In 2004, I became Assistant Director. From 2005-2012, I worked as Facility Director. I transitioned to Area Manager from 2012-2017 before returning to my current role as Facility Director. If called upon, I could and would competently testify as set forth below.

2. My responsibilities as Facility Director include responsibility for all operations, including but not limited to safety, discipline and the interplay between Federal Bureau of Prisons (BOP), the facility, and potential employers for residents. I oversee BOP contracts and implement Statements of Work (SOW). As part of my responsibilities, I serve as the Chairperson for the Center Discipline Committee, which conducts disciplinary hearings for federal inmates housed in BOP's Western Region, including Residential Reentry Centers, such as the Geo Group, Inc., in San Francisco, California. For instance, federal inmates, including at Residential Reentry Centers, are subject to discipline under the BOP's Inmate Discipline Program. *See* Program Statement 5270.09. The Inmate Discipline Program permits sanctions on inmates who commit prohibited acts. In my role, I serve as an advocate for the residents to try to find ways to work within BOP policy and guidelines to support their endeavors.

3. As part of my assigned duties, I have access to records maintained and used in the normal course and scope of BOP and Geo Group, Inc. business, including disciplinary reports, as well as the computerized inmate database, R3M. R3M entries are made at or near the time that events occur and record information about inmates, including, but not limited to discipline history. If additional information is needed from the separate BOP database, SENTRY, I contact the local Residential Reentry Management office for the required records.

Page 2 - Declaration of Maria Richard in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

4. I am aware that Plaintiff, Keith Washington, Federal Register Number 34481-037, is designated to Geo Group, Inc., in San Francisco, California, as of September 3, 2020. He is currently serving the reentry part of his sentence at the Taylor Street Center in San Francisco, California. I am also aware Washington is challenging the BOP's determination that he committed violations of BOP Disciplinary Codes including 297, Phone Abuse - Disrupt Monitoring, and Code 327, Contacting Public without Authorization, on January 10, 2021. Likewise, I am aware that Washington is challenging a February 3, 2021 Incident Report, which was issued for violations of BOP Disciplinary Code 200, Escape; Code 315 Participating in an Unauthorized Meeting or Gathering; and Code 316, Being in an Unauthorized Area without Staff Authorization.

5. Washington is currently serving a twenty-four month sentence based on his 2010 conviction in the U.S. District Court for the Southern District of Texas for a supervised release violation concerning Bank Robbery, in violation of 18 U.S.C. Section 2113(A). Washington has a projected release date of June 13, 2021, via Good Conduct Time (GCT), though it could be extended until August 19, 2021, his Full Term Release date, if Washington continues to commit disciplinary infractions. Exhibit 1 is a true and correct copy of Washington's Public Information Inmate Data.

6. As of the September 3, 2020 date of his transfer to the Taylor Street Facility, Washington had received approval to work on-site at the Bay View News office headquarters in San Francisco. In other words, Washington is permitted to perform his job duties at the Bay View News office, but not at other locations. For instance, he is not permitted to leave the Bay View News office to report a story, without prior authorization from Taylor Street. Exhibit 2 is a true and correct copy of Washington's Bay View News 8-21-20 Confirmation of Employment with the newspaper.

7. On September 3, 2020, Washington also agreed in writing to the Geo Group, Inc. Cell Phone/Computer Equipment Memorandum. The memorandum states that "having a cell phone

while you are a resident at Taylor Street is a Privilege – not a Right." Washington agreed to use the phone for employment purposes, family contact and contact with non-felon friends. Washington had also agreed to not use a cell phone to communicate with other residents of the Facility. The memorandum also states, "Do not record or take pictures at the facility." If Washington was found or suspected of violating any of these privileges, his phone would be confiscated. Likewise, under BOP Disciplinary Code 309, violating a condition of a community program is a moderate severity level prohibited act. Washington also agreed that his phone would be subject to a search at any time. Exhibit 3 is a true and correct copy of Geo Group, Inc. Cell Phone/Computer Equipment Memorandum.

8. On September 5, 2020, Washington executed in writing an Employment Agreement, wherein he agreed that Residential Reentry staff "must be able to contact me at all times and must always be aware of my location." Accordingly, Washington is required to keep Taylor Street apprised of his location, and to obtain approval for leaving his workplace. He also agreed that for any changes in employment scheduling, or to work overtime, his supervisor, Mary Ratcliff, must telephone the RRC to obtain approval. Exhibit 4 is a true and correct copy of Washington's Geo Group, September 5, 2020 Employment Agreement. Exhibit 5 is a true and correct copy of Washington's Resident Employment Verification/Notification executed by Washington's Bay View News Supervisor Mary Ratcliff and myself.

## NOVEMBER 14, 2020 PROTEST

9. On November 14, 2020, an organized protest gathered in Union Square to abolish ICE, close detention camps and free all the detainees. The approximately five hundred protesters marched to Taylor Street and gathered outside our facility for two hours. The protest culminated in front of the San Francisco Federal Building.

10. On or about November 15, 2020, I became aware that Washington spoke at the Federal Building at the conclusion of the November 14, 2020, rally. I called Washington into my office, and he informed me that he did not go to attend or speak at the protest outside Union Square or

Page 4 -   Declaration of Maria Richard in Support of Respondent's Motion to Dismiss
            Plaintiff's Application for a Temporary Restraining Order and/or Order to
            Show Cause and for Preliminary Injunction
            *Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

Taylor Street. Washington admitted that he spoke at the Federal Building.

11. With Washington in my office, I contacted his place of employment, Bay View News, and spoke to his supervisor, Mary Ratcliff. She confirmed that Washington attended the November 14, 2020 protest to partly raise funds for Bay View News, which, according to Ratcliff, relies heavily on community contributions. I reminded Ratcliff that Washington is prohibited to attend any off-site work events unless he has prior approval. Without prior approval, Washington would be considered out-of-bounds and subject to placement on escape status. Going "out of bounds" by attending an off-site event can be treated as a violation of various rules. For instance, Code 200 prohibits "[e]scape from a work detail with subsequent voluntary return to Bureau of Prisons Custody within four hours." Likewise, Code 315 prohibits "Participating in an unauthorized meeting or gathering."

12. In September 2020, Washington agreed to Geo Group Inc.'s Program Rules and Regulations, including its accountability requirements. The accountability requirements state, in pertinent part, that "You Must Have Permission to go to every location. Failure to have permission will result in an incident report." Likewise, "Personal Accountability is expected at all times: RRC, community, pass and furlough. All destinations must be verified. Verification must be turned in when you return to facility." The Program Rules and Regulations further admonish, "Failure to return on time can result in an incident report for escape. If you are unaccountable for 15 minutes after your schedule return time [the] escape process will be initiated and you may be charged with ESCAPE!" Exhibit 6 is a true and correct copy of Washington's Geo Group Inc. Program Rules and Regulations, executed by Washington on September 4, 2020.

13. During my telephone call with Ratcliff, which Washington attended in my office, I also reminded both of them that Washington cannot participate in large rallies or group events, and he cannot speak about BOP or Geo Group, Inc. without permission. While Washington is permitted to work for San Francisco Bay View, he would need permission to report about the BOP or the

Page 5 - Declaration of Maria Richard in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

Geo Group. Likewise, he needs permission to be interviewed about the BOP or Geo Group. Washington stated that he did not speak about BOP or Geo Group, Inc., at the November 14, 2020 protest outside the San Francisco Federal Building.

14. Washington agreed to honor these agreements, and he was permitted to continue work on-site at the Bay View News headquarters.

**MEDIA INTERVIEW REQUEST & DENIAL**

15. On Friday morning, January 8, 2021, Bay View News Editor Mary Ratcliff emailed Washington's Case Manager and myself to request permission for him to speak at a press conference on Monday, January 11, 2021, to discuss city health employees.

16. On Friday afternoon, January 8, 2021, Washington's Case Manager responded to Bay View News Editor Ratcliff and erroneously approved the request as it related to his employment duties and came during work hours. Ten minutes later, I responded to the Case Manager and Ratcliff and indicated that the Case Manager advised erroneously. I told Ratcliff that the BOP had denied this request, as Washington did not have permission to speak in-person, on video or in-writing to any media personnel, excepting for Bay View News staff, without prior written approval. For each interview request, Washington would need to request written permission utilizing the News Interview Authorization form.

17. BOP Program Statement 1480.05, News Media Contacts (9/21/2005) (available at www.bop.gov) states that a News Interview Authorization form must be used by the media when making a request for interview, photographs, voice recording, and appointments for institutional visits with inmates. Per 28 C.F.R. § 540.62, a visiting representative of the media is required to obtain written permission from an inmate before recording the voice of an inmate participating in authorized programs and activities. Per 28 C.F.R. § 540.63(b) and (c), either an inmate or a representative of the news media may initiate a request for a personal interview at an institution, but such requests shall be made within a reasonable time prior to the personal interview. BOP generally applies this program statement to institutions and residential reentry centers, such as

the Taylor Street Facility. In my experience, the BOP needs a week or more to provide approval for an interview or other media event.

18. BOP's Residential Re-entry Management office summarily denied the request on Friday, January 8, 2021, as there was not enough time to satisfy the approval process ahead of the Monday, January 11, 2021, press conference. Exhibit 7 is a true and correct copy of the Washington January 11, 2021 News Interview Authorization Form that I provided Washington. Exhibit 8 is a true and correct copy of the 1-8-2021 Richard, Iruayenama & Ratcliff Email Chain. At 12:39 p.m., I informed Richard, Iruayenama & Ratcliff that the BOP denied the request.

## **INCIDENT REPORT NUMBER 3466318**

19. On January 8, 2021, I posted a memorandum to all residents to indicate that a few residents and staff had recently tested positive for COVID-19 and that we needed to impose some mitigation strategies to get through the next couple weeks. The memorandum allowed residents to continue working with good COVID-19 precautions. Exhibit 9 is a true and correct copy of the Taylor Street Facility 1-8-2021 COVID-19 Memorandum.

20. On January 9, 2021, I received an email from Tim Redman, a reporter with 48hills.org, regarding a COVID-19 surge at the Taylor Street Facility. The email stated, in pertinent part, that he "just got a press release about COVID at the Taylor Center" and he asked a series of questions concerning steps Taylor Street planned to take to safeguard the residents. Exhibit 10 is a true and correct copy of the Redmond 1-9-2021 Email to Facility Director Richard.

21. The Geo Group did not issue any press release. Through the Geo Group, Inc. Public Relations Department, I became aware that my COVID-19 memorandum had circulated on Facebook, Twitter and through various media outlets.

22. To determine the source of the circulation, I instructed a Case Manager from Geo Group, Inc., to search six cell phones, including Washington's cell phone. Under the Geo Group, Inc. Cell Phone/Computer Equipment Memorandum, "having a cell phone while you are a resident at Taylor Street is a Privilege – not a Right." In addition, the memorandum states, "Do not record

or take pictures at the facility." In addition, under the Cell Phone/Computer Equipment, inmates agree that cell phones may be searched at any time.

23. A search of Washington's phone revealed a text message that Washington initiated to Redmond stating Washington had a story regarding a COVID-19 outbreak at the Taylor Street Facility. On Washington's phone, photos of the memorandum were recovered. Exhibit 11 is a true and correct copy of the Washington and Redmond Text Messages.

24. Washington was not authorized to contact the media in his capacity as a resident; nor was Washington authorized to take photos inside the facility, including photographs of internal memoranda, and subsequently post those photographs online and/or send to other individuals.

25. On January 11, 2021, Washington received a copy of Incident Report Number 3466318 for an alleged violation of BOP Code 327, Unauthorized Contact with the Public, and Code 297, Phone Abuse.[1] Exhibit 12 is a true and correct copy of Incident Report Number 3466318 at 1, Boxes 9-10, 14-16.

26. During his disciplinary hearing, Washington waived his right to a staff representative and his right to call witnesses. Exhibit 13 is a true and correct copy of the Center Discipline Committee Report for Incident Report Number 3466318 at 1, Boxes II and III(c). Washington exercised his right to make a statement. He admitted that he knew he could not take a picture of my January 8, 2021 COVID-19 memorandum. He indicated that his support and family are all reporters and media. Per Washington, Tim Redmond was a friend and not just a reporter. He said he would abide by phone rules, but he would be appealing. *See* Exhibit 12 at 2, Box 17; *see also* Exhibit 13 at 1, Box III(B). Geo Group, Inc. requires inmates to get prior written approval to be interviewed by outside media to discuss information that pertains to the BOP or Geo Group, Inc. *See* Exhibit 12 at 2, Box 17; *see also* Exhibit 13 at 1, Box III(B). In my experience,

---

[1] On Sunday January 10, 2021, BOP's Residential Reentry Management directed me to add a violation of Code 297, Phone Abuse, because taking pictures at the facility violated the cell phone policy. I added this charge by hand prior to the delivery of the Incident Report to Washington on January 11, 2021.

**Page 8 -** **Declaration of Maria Richard in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

an interview with outside media includes telephonic, email, and text communications.

27. At the conclusion of the disciplinary hearing, Washington lost the use of his cell phone from January 15, 2021, through February 13, 2021. He also lost fourteen (14) days of Good Conduct Time, consistent with Prison Litigation Reform Act and BOP disciplinary policy.

28. After the disciplinary process concluded, Washington received a copy of his BP-10 administrative remedy paperwork with which to appeal this disciplinary decision.[2] Though Washington told me that he understood that he violated the rules regarding outside communication concerning BOP or Geo Group, Inc., Washington affirmed his hatred for Geo Group, Inc., dating back to his association with Geo Group, Inc. in preceding years.

## **FEBRUARY INCIDENT REPORT**

33. On Tuesday, February 2, 2021, Washington's newspaper, Bay View News, published an article entitled, "SF Bay View editor gagged, threatened and his work phone confiscated for reporting COVID outbreak at private halfway house". The article included a thirty-six (36) minute press conference audio that named multiple GEO employees. Washington also appeared on a local radio station on February 2, 2021, at 5:00 P.M. on KPFA 94.1. Washington did not have a News Authorization form in place to conduct the press conference or interview. So the BOP did not approve either of these activities. The links to these episodes are https://sfbayview.com/2021/02/sf-bay-view-editor-gagged-threatened-and-his-work-phone-confiscated-for-reporting-covid-outbreak-at-private-halfway-house/ and https://kpfa.org/episode/flashpoints-february-2-2021/.

34. On Wednesday, February 3, 2021, my staff and I became aware of the Bay View News

---

[2] Plaintiff allegedly submitted a BP-9 to the Residential Re-entry Management Office on December 18, 2020, challenging the denial of his request for BOP to transfer him to home confinement under the Cares Act. As of January 17, 2021, when I followed up on this request, it appeared that BOP had not received the request. The BP-9 allegedly challenging the decision not to transfer him to home confinement is separate from challenging the disciplinary hearing. Though Washington told me he intended to appeal the disciplinary ruling, BOP also made me aware that subsequent conversations with Plaintiff's attorney revealed that his client didn't intend to pursue the administrative remedy process for a perceived lack of time to adjudicate it.

**Page 9 -** **Declaration of Maria Richard in Support of the Federal Bureau of Prisons' Response to Plaintiffs' Application and Supplemental Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST

story and audio press conference link and prepared an Incident Report.

35. On Thursday, February 4, 2021, Geo Group, Inc. staff served Washington an Incident Report, charging him with violation of BOP Disciplinary Code 200, Escape; Code 315 Participating in an Unauthorized Meeting or Gathering; and Code 316 Unauthorized Contacts with the Public.[3] Exhibit 14 is a true and correct copy of the February 3, 2020 Incident Report. One issue that may arise from too much media activity by an inmate, is that the inmate may become a "big wheel" or celebrity, of sorts. The inmate's "big wheel" status can be disruptive to the operation of the facility, as the inmate can develop a sense of prestige. Likewise, the inmate can encourage others to engage in disruptive behavior.

36. Geo Group Inc.'s investigation revealed that Washington had participated in a recorded press conference and at a rally sometime in December 2020 at UC Hastings Campus. In December 2020, Washington did not have permission to attend any event at the UC Hastings Campus. According to a review of his sign out sheets, Washington went to work at the Bay View News and returned at varying times. As Washington did not disclose attending the UC Hastings event in December 2020, he appears to have misrepresented his activities. Exhibit 15 is a true and correct copy of Washington's December 2020 Daily Accountability Reports showing that Washington reported that he went only to and from his work site to the Taylor Street Facility during the entire month. Washington did not have written authorization to speak with any media about employees from BOP or Geo Group Inc., and Washington did not have permission to leave his work site. In my experience, it is disruptive for an inmate to fail to disclose his location or off-site activities. For instance, the inmate can become involved in criminal activities, including obtaining weapons or drugs. Likewise, the inmate's conduct can create serious security risks, both by his personal actions and through his dealings with others, who could pose a direct threat against the facility. The inmates need to follow the rules, for orderly operation of the facility.

---

[3] The Incident Report errantly put Code 316 instead of Code 327. The Incident Report will be reserved when the process moves forward.

**Page 10 -** **Declaration of Maria Richard in Support of Respondent's Motion to Dismiss Plaintiff's Application for a Temporary Restraining Order and/or Order to Show Cause and for Preliminary Injunction**
*Washington v. Federal Bureau of Prisons, et al,* 21-cv-00787-JST

37. During his September orientation, Washington acknowledged that he must fill out a Daily Accountability Report whenever he left the facility and entered the community. Washington consented to the policy that only permits him to go to the places listed on the Daily Accountability Report and that any deviation from his Daily Accountability Report is considered unaccountability and disciplinary action will follow. Exhibit 16 is a true and correct copy of the Geo Group, Inc. Facility Boundaries policy.

38. Even though this February 3, 2020 Incident Report issued, in part, from the December 2020 rally, BOP Program Statement 5270.09 CN-1, Inmate Discipline Program (November 18, 2020) (available at www.bop.gov) and 28 C.F.R. Section 541.5 state that inmates will "ordinarily receive the incident report within twenty four (24) hours of staff becoming aware of your involvement in the incident" and not within twenty four (24) hours of when the incident happened. Geo Group, Inc. administered the February 3, 2021 Incident Report within twenty four (24) hours of becoming aware of Washington's involvement in the incident.

39. As of February 5, 2021, Geo Group Inc. and BOP agreed to postpone the hearing for February 2, 2021 Incident Report Number until after the Court rules on Plaintiffs' Application for a Temporary Restraining Order over the episodes discussed in this declaration.

40. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge and belief. The documents attached hereto are true and accurate to the best of my knowledge, and are provided and maintained in the ordinary course of business by the BOP and Geo Group, Inc. Executed on February 12, 2021, at San Francisco, California.

Maria Richard
Facility Administrator- Taylor Street
Geo Group Inc.

Page 11 -    Declaration of Maria Richard in Support of the Federal Bureau of Prisons'
             Response to Plaintiffs' Application and Supplemental Application for a
             Temporary Restraining Order and/or Order to Show Cause and for
             Preliminary Injunction
             *Washington v. Federal Bureau of Prisons, et al*, 21-cv-00787-JST