RICHARD TAN, SBN 327366
LAW OFFICES OF RICHARD TAN
3020 Bridgeway, Suite 192
Sausalito, CA 94965
Telephone: (510) 345-3246
Facsimile: (415) 532-1310
Email: richardtan@tutanota.com

Attorneys for Plaintiffs,
KEITH H. WASHINGTON,
SAN FRANCISCO BAY VIEW
NATIONAL BLACK NEWSPAPER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| WASHINGTON, KEITH H. and SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDERAL BUREAU OF PRISONS, GEO CALIFORNIA, INC., MONICA HOOK, MARIA RICHARD, WILL GOMEZ, MURTALA LANVAL and DOES 1 – 20,<br><br>Defendants. | Case No.: 4:21-cv-00787-JST<br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE AND FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon Jon S. Tigar<br>Location: Courtroom 6 – 2nd Floor<br>Date: March 10, 2021<br>Time: 9:30 a.m. |

**TABLE OF CONTENTS**

# Contents

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

I.   The Terms of Mr. Washington's Employment ................................................... 2

II.  The "No More Cages" Rally (November 14, 2020) ............................................. 4

III. The UC Hastings Rally (November 16, 2020) .................................................... 4

IV.  The November 23 Meeting With Maria Richard ................................................ 4

V.   The SF Bay View Sends an Email Seeking Clarification, Which Was Ignored ..... 5

VI.  San Francisco Bay View Articles Read by Taylor Street Staff, Including Maria Richard ................................................................................................................. 6

VII. Retaliatory Acts Against Mr. Washington and the SF Bay View ........................ 6

LEGAL ARGUMENT ................................................................................................... 7

I.   Legal Standard Governing Defendants' Charges ................................................ 7

II.  What Plaintiffs Reasonably and Actually Understood About Mr. Washington's Employment ........................................................................................................... 7

III. Plaintiffs Are Likely to Succeed on the Merits ................................................... 8

   A. The November 23, 2020 Meeting ..................................................................... 8

   B. The Retaliation on January 10/11, 2021 ........................................................... 9

   C. The Retaliation on February 4, 2021 ............................................................. 10

   D. The Protected Conduct Was Not an Interview .............................................. 10

    E.    Legitimate Penological Goal Analysis is Not Required ..................................... 11

IV.    The SF Bay View is Likely to Succeed on the Merits of Its Constitutional Claim ............................................................................................................................. 12

V.    Plaintiffs Will Suffer Irreparable Harm if an Injunction Does Not Issue .......... 13

VI.    The Balance of Equities Weighs in Plaintiffs' Favor .......................................... 13

VII.    Exhaustion Under the PLRA Does Not Apply .................................................. 13

    A.    A Textual Exception to the PLRA's Exhaustion Requirement Applies ............ 13

    B.    PLRA Exhaustion Does Not Apply to the SF Bay View .................................... 14

VI.    Scope of the Proposed Injunction Under the PLRA ............................................ 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bruce v. Ylst,*
   351 F.3d 1283, 1289 (9th Cir. 2003) .................................................................................7, 10, 12

*California v. Azar,*
   911 F. 3d 558, 584 (9th Cir. 2018) ............................................................................................ 15

*Frost v. Symington,*
   197 F. 3d 348, 357 (9th Cir. 1999) ............................................................................................ 12

*Index Newspapers LLC v. United States Marshals Service,*
   977 F. 3d 817, 842 n.3 (9th Cir. 2020) ..................................................................................... 15

*Martin v. Rison,*
   741 F. Supp. 1406, 1413-16 (N.D. Cal. 1990) .......................................................................... 11

*Ross v. Blake,*
   136 S. Ct. 1850, 1859 (2016) ..................................................................................................... 14

*Valdez v. Rosenbaum,*
   302 F.3d 1039 (9th Cir. 2002) ................................................................................................... 11

*Valentine v. Collier*,
   140 S. Ct. 1598 (May 14, 2020) ................................................................................................ 14

*Valentine v. Collier,*
   208 L. Ed. 2d 415 (Nov. 16, 2020) ............................................................................................ 14

**Statutes**

18 U.S.C. § 3626(b)(2) ................................................................................................................... 15

42 U.S.C. § 1997e(a) ............................................................................................................... 11, 13

**Regulations**

28 C.F.R. § 542.18 .......................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 65(d) .................................................................................................. 14

**Other Authorities**

BOP Program Statement 1480.05 ............................................................................. 11

# INTRODUCTION

This case concerns a fundamental deprivation of the First Amendment rights of an individual who was permitted, by the Bureau of Prisons ("BOP"), to work as a journalist and editor for an outside newspaper. The BOP's actions implicate the rights of the newspaper as well.

Defendants admit they imposed a ban on speech about BOP/GEO on November 23, 2020 – a ban they do not defend. To justify their later actions, they cite cases and BOP policy regulating interviews of prisoners. But that is not the protected speech here. Malik Washington was not interviewed by Tim Redmond and was never cited as a source. Furthermore, Malik collaborated with SF Bay View staff to produce a press release, under the newspaper's name, which was *in defendants' possession* when the first set of retaliatory acts took place in January.

With respect to the "escape" charges, both Malik and the SF Bay View understood the terms of his BOP-approved employment to mean that he could report on, and attend, events outside of the SF Bay View offices in the normal course of his job as a journalist and editor for a national Black newspaper. By Defendants' own admission, neither Malik, nor the SF Bay View, were ever told that he could only do his work inside the SF Bay View offices. Defendants' documents confirm this.

The UC Hastings rally took place on November 16, 2020 - before any possible notice to Plaintiffs. It was a rally *co-sponsored* by the SF Bay View, which Malik reported on.

If plaintiffs had known that Malik was physically limited to working in the SF Bay View offices, they would have brought this up - and they did. The first time any possible issue arose was in a meeting with Maria Richard on November 23, 2020. That 15 minute meeting primarily consisted of Richard imposing an agreement on Malik not to talk about BOP or GEO. After the meeting, Plaintiffs wrote a detailed letter seeking to clarify GEO's position on "accountability". GEO never responded to the letter. Furthermore, Maria Richard was on actual notice of Malik's offsite activity

*Washington v. Federal Bureau of Prisons,* Case No. 4:21-cv-00787-JST
Plaintiffs' Reply to Defendants' Opposition to Application for TRO and/or PI - 1

through the SF Bay View newspaper itself, which she reads, and complimented Malik about, as late as January 6, 2021.

Without understanding the underlying situation, Defendants argue that Malik and his work are replaceable. Most articles at the SF Bay View are written by volunteers. Mary Ratcliff is 82 years old, has metastatic breast cancer, and is training Malik as her successor. The likely consequence of Malik being removed from his job is the collapse of a newspaper which has been a pillar of the Bayview-Hunters Point community for 45 years. That would be a tremendous cultural, social and political loss to the Bay Area and the Black community nationally, and it is irreparable harm, both to the SF Bay View, and to a human being who plainly exemplifies BOP's stated goal of productively reintegrating prisoners into society and the community.

## STATEMENT OF FACTS

### I.     The Terms of Mr. Washington's Employment

Malik Washington was transferred to the Taylor Street Facility on September 3, 2020. Declaration of Malik Washington ("Dec. Wash."), ¶ 3.

Before he began his job, the SF Bay View wrote a Confirmation of Employment to the Taylor Street Center on August 21, 2020. Defendants' Dec. of Maria Richard ("Dec. Richard"), Ex. 2; Third Declaration of Mary Ratcliff ("Dec. Ratcliff"), ¶ 8-10. The letter is two sentences long. It only "confirm[s] . . . employment". *Id.* The letter says nothing about physical confinement to the SF Bay View offices. *Compare* Dec. Richard, ¶ 6 *with* Ex. 2. Neither Malik nor the SF Bay View understood it as such. Dec. Wash., ¶ 38-41; Dec. Ratcliff, ¶ 11.

On or about September 8, 2020, Malik was given a Taylor Street Resident Handbook. Dec. Wash., ¶ 12; Def. Ex. 4, pp. 4-5. The handbook, in the section on "Resident Accountability", has a single sentence concerning accountability. *Id.*, ¶¶ 13-15. There is no language concerning the physical boundaries of work. *Id.*;

SF Bay View co-founder Mary Ratcliff and Taylor Street Facility Director Maria

*Washington v. Federal Bureau of Prisons,* Case No. 4:21-cv-00787-JST
Plaintiffs' Reply to Defendants' Opposition to Application for TRO and/or PI - 2

Richard signed a "Resident Employment Verification/Notification" form. Dec. Ratcliff, ¶ 18. The form contains a single reference to "accountability". *Id.,* ¶ 19. Mary Ratcliff understood this to mean Malik could work outside the SF Bay View offices. *Id.,* ¶ 21.

"Accountability" is defined in GEO's policy on Facility Boundaries. Dec. Richard, Ex. 16. Accountability means deviation from the locations listed on the Daily Accountability Report (DAR) or the schedule. *Id.* Malik's DARs for December say he was at "work", "SF Bay View" or "work/SF Bay View". Dec. Richard, Ex. 15. The DARs distinguish between "work" and "SF Bay View". *Id.* No problem with Malik's DARs has ever been brought to his attention. *Compare* Dec. Wash., ¶¶ 19-20, 24 *with* Dec. Richard, ¶¶ 36-37. Malik's schedule does not limit him to the SF Bay View offices. Dec. Wash, ¶ 21-24, Ex. "A".

Malik signed an Employment Agreement. Dec. Wash., ¶¶ 25-28; Dec. Richard, Ex. 4. The Employment Agreement does not state that employees must be confined to a single building. *Id.* It does not refer to a "workplace", nor does it define the boundaries of that "workplace". *Compare* Ex. 4 *with* Dec. Richard, ¶ 8, Def. Opp. at 7.

Malik signed a memorandum on "Program Rules and Regulations". Dec. Wash., ¶¶ 34-37; Dec. Richard, ¶ 12, Ex. 6. The memo states "All destinations must be verified," and "You must have Permission to go to every location." *Id.* What a "destination" and "location" is not defined. *Id.*

In September 2020, Defendant Lanval made a single site visit to confirm Malik's employment. Dec. Ratcliff, ¶ 22-23. Between September 2020 and the present, Taylor Street Center staff may have called once to verify Malik's employment. *Id.,* ¶ 24. The BOP's Statement of Work for Residential Reentry Centers requires monthly telephone calls. Def. Opp., Ex. 1, pp. 59-60.

Malik and the SF Bay View understood the terms of his employment, as a reporter, to mean the common range of duties expected of a reporter and editor.

*Washington v. Federal Bureau of Prisons,* Case No. 4:21-cv-00787-JST
Plaintiffs' Reply to Defendants' Opposition to Application for TRO and/or PI - 3

Dec. Ratcliff, ¶ 11-17, 21; Dec. Wash., ¶¶ 38-49. Malik's Case Manager thought the same thing on January 8, 2021. Dec. Richard, Ex. 8 (email of Belief Iruayenama). If Malik of the SF Bay View had known otherwise, they would have brought the issue up. Dec. Ratcliff, ¶ 25, Dec. Wash., ¶¶ 39, 41. The first time any issue was even arguably brought to their attention was November 23, 2020.

II.     **The "No More Cages" Rally (November 14, 2020)**

On November 14, 2020, Malik attended a "No More Cages" rally against ICE detention centers. Dec. Wash., ¶ 61. While there, he made remarks critical of the BOP and GEO. Id. ¶ 63. Malik attended the "No More Cages" rally as the Assistant Editor of the SF Bay View. Dec. Wash., ¶ 61, Dec. Ratcliff, ¶ 27.

III.    **The UC Hastings Rally (November 16, 2020)**

POOR Magazine organized a rally in front of UC Hastings on November 16, 2020. *Compare* Declaration of Lisa "Tiny" Gray-Garcia (Dec. Garcia), ¶ 4, 7 *with* Def. Opp., at 9 ("December 2020"); Dkt. No. 26, Ex. D (incident report) ("December 2020").

The rally was co-sponsored by the SF Bay View. Dec. Garcia, ¶¶ 8-10. Malik contributed a quote to the email announcement for the rally, identifying him as a representative of the SF Bay View. *Id.*, ¶¶ 11-13. Malik attended the event as the editor of the SF Bay View, reported on the event for the SF Bay View, and was asked, as a co-sponsor of the event, to speak, which he did. *Id.,* ¶ 15-17; Dec. Washington, ¶¶ 64-71.

IV.     **The November 23 Meeting With Maria Richard**

On November 23, 2020, at around 11:00 a.m., Malik was taken to a meeting with Defendant Maria Richard. *Compare* Dec. Wash., ¶¶ 72-73 *with* Def. Opp., at 7 ("November 15, 2020"); Dec. Richard, ¶ 10 ("On or about November 15 ,2020"). This meeting lasted about 15 minutes. Dec. Wash., ¶ 87.

Richard stated that she had become aware of Malik's speech at the "No More Cages" rally through GEO's monitoring of social media. Dec. Wash., ¶ 75. Malik confirmed that he was present at the rally and addressed the crowd. *Id.,* ¶ 76. Richard stated that Malik was unaccountable at the rally and she could send him to prison. *Id.,* ¶¶ 78-79. Mary Ratcliff confirmed over telephone that Malik was working for the SF Bay View at the rally. Dec. Ratcliff, ¶ 27; Dec. Wash., ¶¶ 80-84. Richard then said "You can go back to work," but that "I will be watching you," and that Malik "need[s] to make sure you aren't anywhere you're not supposed to be." Dec. Wash., ¶ 85. Richard then said "Understand – don't talk about the Bureau of Prisons or the GEO Group, and we'll be fine." *Id.,* ¶ 86. Malik said, "Yes." *Id.*

Malik understood Maria Richard to be saying that as long as he did not criticize GEO or the BOP, he could continue his job as editor of the SF Bay View. *Id.,* ¶ 88 - 95. If he did so, he would be sent back to prison. *Id.*

## V. The SF Bay View Sends an Email Seeking Clarification, Which Was Ignored

Immediately after the meeting, on November 25, 2020, Mary Ratcliff wrote an email to GEO seeking clarification on Malik's employment. Dec. Ratcliff, ¶¶ 28-42; Ex. "A". Malik agreed he would not speak or write about the GEO Group or BOP. *Id.,* ¶ 31, 35. Mary Ratcliff agreed that Malik needed to be accountable. *Id.,* ¶ 32. She sought permission for Malik to travel within an eight-block radius around the SF Bay View offices to perform his job. *Id.,* ¶ 33. She asked what procedure GEO required for Malik to attend press conferences and interviews. *Id.,* ¶ 34. She stated that nobody had ever told Malik or the SF Bay View about these restrictions before. *Id.,* ¶ 37. The email was sent to Maria Richard and Murtala Lanval. *Id.,* ¶ 37.

Nobody from the Taylor Street Center ever responded to the email.[1] *Id.,* ¶ 38.

---

[1] The November 25 email was sent to the wrong email address for Maria Richard. Murtala Lanval, however, did receive the email. Dec. Ratcliff, ¶ 39-40.

**VI.     San Francisco Bay View Articles Read by Taylor Street Staff, Including Maria Richard**

From September 2020 onwards, Malik brought 50-60 copies of the print version of the SF Bay View every month to the Taylor Street Center. Dec. Wash., ¶ 104. He has been complimented on articles in the paper, and asked for copies of the paper, by at least eight different staff at the Center. *Id.,* ¶ 105.

From September 2020 to February 2021, there are six separate front page articles in the SF Bay View, with Malik's byline, explicitly stating he was away from the SF Bay View offices reporting or conducting interviews, giving the addresses he was at. *Id,* ¶¶ 106-124*;* Exs. B-E. The articles include photographs, credited to Malik, depicting places outside the SF Bay View offices. *Id*. The photographs show Malik, in some cases on the front page, with other people outside the SF Bay View offices. *Id*.

Maria Richard complimented Malik on an article in the newspaper on or about January 6, 2021. *Id.,* ¶ 125.

On January 8, 2021, Malik's Case Manager believed that Malik could work outside the SF Bay View offices. Dec. Richard, Ex. 8 (email of Belief Iruayenama).

**VII.     Retaliatory Acts Against Mr. Washington and the SF Bay View**

On January 9, 2021, Malik spoke on the phone and over text with Tim Redmond, and provided Redmond with the Taylor Street Center's January 8, 2020 memo, a Twitter link to the memo, and the SF Bay View's press release. Dec. Washington, ¶¶ 127-131. Washington wrote the first draft of the SF Bay View's press release. *Id. ,* ¶¶ 132, 134. The press release was in the possession of GEO Group staff when they filed an incident report against Malik on January 10, 2020. Dec. Wash., ¶¶ 136-137.

Malik and the SF Bay View filed this lawsuit on February 1, 2021 and held a press conference on February 2, 2021, at which Malik spoke. Dec. Wash, ¶¶ 152-161. Defendants filed an incident report against Malik on February 4, 2021. Dec. Washington, ¶¶ 162-168.

# LEGAL ARGUMENT

## I. Legal Standard Governing Defendants' Charges

"In [*Hines v. Gomez*, 108 F. 3d 265 (9th Cir. 1997)] we held that the "some evidence" standard of [*Superintendent, Mass. Corr. Inst. V. Hill*, 472 U.S. 445 (1985)] did not apply to retaliation claims." *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003).

Defendants' proposed "some evidence" standard applies only to due process claims attacking a disciplinary board's hearing. *Id*. It does not apply to retaliatory accusations by correctional officers. *Id*.

## II. What Plaintiffs Reasonably and Actually Understood About Mr. Washington's Employment

Plaintiffs agree with defendants that BOP authorized Malik to work as an editor and journalist - but not for a "local on-line news service". Def. Opp., p. 1. The SF Bay View is a national, monthly print newspaper with a circulation of 20,000, of which 3,000 copies are sent each month to prisoners. Dec. Ratcliff, ¶ 3.

Malik and the SF Bay View understood BOP's work authorization to mean that Malik would do the job functions expected of any newspaper editor and journalist. This included reporting and fundraising outside the physical offices of the SF Bay View. Dec. Wash., ¶¶ 38-39, 44-49; Dec. Ratcliff, ¶¶ 11-17.

Defendants claim that Malik was restricted to working at the SF Bay View offices when he started his pre-release, and that he "agreed to the limitations on reporting locations". Def. Opp at 1, 6-7. Their evidence does not support their claim.

Maria Richard makes several such claims. Dec. Richard, ¶¶ 6, 8, 11. She supports them, for instance, with the SF Bay View's August 21, 2020 Confirmation of Employment. But that letter is literally two sentences long. It only "confirm[s] . . . employment". *Compare* Dec. Richard, ¶ 6 *with* Dec. Richard, Ex. 2. Defendants' other documents are comparable. Dec. Ratcliff, ¶¶ 8-11, 18-21; Dec. Wash., ¶¶ 8-37; Dec. Richard, Exs. 4-6. None contain any language confining Malik to working only

at the SF Bay View offices. *Id.*

Maria Richard never actually says that she told Malik about a requirement that he work solely at the SF Bay View offices. She only claims, without support, that the requirement existed. Dec. Richard, ¶ 6; *see also* Def. Opp., p. 7.

If Plaintiffs had known that Malik was not permitted to work outside the SF Bay View offices, they would have brought the issue up. Dec. Washington, ¶¶ 39, 41, Dec. Ratcliff, ¶ 25.

### III.        Plaintiffs Are Likely to Succeed on the Merits

### A.        The November 23, 2020 Meeting

On November 23, 2020 around 11:00 a.m. – not November 15 as Defendants allege – Malik had a conversation with Maria Richard. Dec. Wash., ¶ 73. The primary content of that conversation, which lasted only 15 minutes, was an agreement between Malik and Maria Richard that Malik would not speak about BOP or GEO. Dec. Washington, ¶¶ 87-95.

Maria Richard admits this. Dec. Richard, ¶ 13. But Defendants ignore it in their brief, because acknowledging that Malik was disciplined for speaking about BOP or GEO is tantamount to admitting that GEO retaliated against Malik for his speech on January 9, 2021.

Plaintiffs reject Defendants' claims that detailed restrictions were imposed at this meeting. Dec. Wash., ¶¶ 88-93. For example, restrictions on "interviews" were never discussed. *Id.*, ¶ 90-92. Maria's Richard's actual understanding is shown in two later emails on January 8, 2021, at 12:39 and 12:43 p.m. It was that "no one can speak to the media ever . . . without permission" and "Mr. Washington is not permitted to speak in person, video or in writing to any media without permission from the BOP".[2] Dec. Richard, Ex. 8.

---

[2]     Plaintiffs acknowledge that Maria Richard sent an email ten minutes after their request for permission for Malik to attend a press conference, on January 8, 2021. This

Plaintiffs wrote a detailed letter to GEO requesting clarification, which GEO never responded to. Dec. Ratcliff, ¶¶ 28-42. Maria Richard, and other GEO staff, were also aware, through print copies of the SF Bay View, that Malik regularly reported on events outside the SF Bay View offices. Dec. Wash., ¶¶ 106-124.

GEO, on the other hand, made only a single site visit to the SF Bay View offices at the beginning of Malik's employment. It only telephoned to verify employment, at most, once during the period from September 2020 to the present. Dec. Ratcliff, ¶¶ 22-24. As late as January 8, 2021, Taylor Street staff believed that Malik was authorized to work off-site. Dec. Richard, Ex. 8 (email of Belief Iruayenama, 12:29 p.m.).

### B.      The Retaliation on January 10/11, 2021

Maria Richard admits that she instructed Defendant Gomez to conduct the cell phone search. Dec. Richard, ¶ 22. Defendants do not contest that no comparable cell phone search took place at the Taylor Street Facility for six months prior to January 8, 2020. Dec. Wash., ¶ 28. They also ignore that GEO had, *in its possession*, a press release by the SF Bay View about the developing COVID outbreak on January 10, 2021, when the retaliatory cell phone search took place. Richard knew of this press release. Dec. Richard, ¶¶ 20-21. Defendant Monica Hook, who received the press release from Tim Redmond, is GEO's Vice President of Communications. Dkt. No. 26, ¶ 27. Richard was in email contact with Hook. Dec. Wash., ¶¶ 136-137. Richard does not deny that she had the press release prior to the retaliation taking place, nor does she disclose her communications with Hook in her Declaration.

Direct, unrebutted evidence thus supports the claim that the content of Malik

---

email was received by the SF Bay View, but staff did not notice the email until February 17, 2021. Dec. Ratcliff, ¶ 45. The press conference denial, however, is a separate act of retaliation from the cell phone search which took place at 3:00 p.m. on January 10, 2021.

*Washington v. Federal Bureau of Prisons,* Case No. 4:21-cv-00787-JST
Plaintiffs' Reply to Defendants' Opposition to Application for TRO and/or PI - 9

and the SF Bay View's speech was the sole motivating factor for the retaliation. In addition, there is now unrebutted evidence on timing and inconsistency with past practice. *Bruce v. Ylst,* 351 F. 3d 1283, 1288 (9th Cir. 2003.

### C. The Retaliation on February 4, 2021

The retaliatory motivation in this case began on November 23, 2020, with the imposition of a prohibition on speaking about BOP or GEO. It continued through January 2021. At that time, Maria Richard intended to curtail all media contacts by Malik, because he spoke about a COVID outbreak. Dec. Richard, Ex. 8 (emails by Richard on Jan. 8, 2021). When Malik engaged in speech critical of the BOP and GEO on February 2, 2021, the retaliation continued.

The UC Hastings rally took place before the November 23, 2020 meeting. Defendants knew of, and allowed, Malik to work off-site at least through February 4, 2021. The press conference on February 2, 2021 was organized by the SF Bay View, in opposition to an unconstitutional blanket restriction on media contacts by Malik. The Flashpoints segment on February 2, 2021 is not the subject of a disciplinary charge, but Malik is a regular co-presenter on KPFA Flashpoints, with a segment on the show. He has appeared on the show as a presenter at least ten times from November 2020 to the present. Dec. Wash., ¶¶ 169-171.

### D. The Protected Conduct Was Not an Interview

To start with, Maria Richard herself did not think she was regulating interviews. Def. Opp., p. 1 ("interviewed with Tim Redmond"), 8 (same), 16-17, 18 ("unauthorized phone interview"), 20 ("phone interview"). What Maria Richard actually thought on January 8, 2021 was "no one can speak to the media ever . . . with out permission", and "Mr. Washington is not permitted to speak in person, video or in writing to any media with out permission from the BOP." Dec. Richard, Ex. 8.

These are blanket restrictions, consistent with Malik's account that Richard

imposed, for the first time, an identical blanket restriction on Malik via the "News Interview Authorization Form", requiring BOP approval via the form for all contact with the press, on January 11, 2021. Dec. Wash., ¶ 145.

Defendants rely on cases concerning the First Amendment rights of prisoner interviewees. Malik was not interviewed by Tim Redmond. Their communication was a professional call between members of the press, authorized by BOP as part of his BOP-mandated pre-release job. A prisoner communicating with "persons" outside prison walls engages in protected conduct. *Valdez v. Rosenbaum,* 302 F.3d 1039, 1048 (9th Cir. 2002) (telephone calls). Outgoing professional communication pursuant to a BOP-authorized job is *a fortiori* also protected conduct.

The only authorities Defendants cite for regulating Malik's speech are 28 C.F.R. § 540.60 *et seq*. and BOP Program Statement 1480.05, which apply only to interviews and media visits to a correctional institution.

To the extent *Martin v. Rison,* 741 F. Supp. 1406, 1413-16 (N.D. Cal. 1990), *vacated as moot sub nom. Chronicle Pub. Co. v. Rison,* 962 F. 2d 959 (9th Cir. 1992) is authority, it is readily distinguishable. The prisoner in *Martin* was a paid, occasional contributor to the San Francisco Chronicle in Lompoc, a federal prison. Malik is an employee and officer of the SF Bay View, who BOP, pursuant to its own policies, permitted to work *as a paid journalist* while Malik is residing at a minimum-security halfway house.

E. **Legitimate Penological Goal Analysis is Not Required**

First, the rules Defendants defend do not even govern the conduct they punish. Malik's conversation with Redmond was not an "interview", and it was not "unauthorized". Malik was not notified of any restrictions on press contact, legitimate or otherwise, until after the retaliation on January 10, 2021. Malik was also not "off-site without accountability" on November 16, 2021, Def. Opp, at 20, because Plaintiffs reasonably understood at that that Malik was a working journalist.

Second, Defendants ignore binding precedent holding that if Plaintiffs show that discipline was used "as a cover or a ruse" to punish him, Defendants cannot "[articulate] a general justification for a neutral process." *Bruce v. Ylst,* 351. F 3d 1283, 1289 (9th Cir. 2003). Defendants' entire brief is based on the proposition that their disciplinary decisions were neutral applications of BOP rules, despite now-unrebutted evidence to the contrary.

Third, Plaintiffs have produced evidence refuting the "common-sense connection between a legitimate objective and a prison regulation." *Frost v. Symington*, 197 F. 3d 348, 357 (9th Cir. 1999) (giving standard). Malik never had any discipline problems prior to January 8, 2021. Dec. Wash., ¶ 54. Maria Richard notes that he was "cooperative and polite" during his disciplinary hearing. Dkt. No. 26, Ex. C. Indeed, *staff* at the Taylor Street Center, including Maria Richard, appreciate and encourage Malik's contributions to the community through his BOP-approved reporting. Dec. Wash., ¶ 105.

Plaintiffs cannot agree that BOP's regulations are justified by a risk of Malik becoming a disruptive "big wheel", that he might associate with people who pose a threat to the facility, or that he might obtain drugs or weapons. Def. Opp., at 20. If Malik or any other Taylor Street resident actually really wanted to pick up drugs or weapons, they could do all those things **on the way to work** on the street, right outside the front doors of the Taylor Street Center.

Malik is sober and drug free. Dec. Wash., ¶ 55.

**IV.     The SF Bay View is Likely to Succeed on the Merits of Its Constitutional Claim**

Plaintiffs emphasize that the protected conduct here includes a press release, issued under the SF Bay View's name, which was in GEO's possession at the time of the retaliatory acts. The press release was not under Malik's name. It was the SF Bay View's speech. The SF Bay View's speech also includes Malik's professional communications, as the editor of the newspaper, with Tim Redmond; Malik's

communications with other SF Bay View staff; and Malik's draft of the SF Bay View press release. Dec. Wash., ¶¶ 131-135. All these speech acts were retaliated against by Defendants on January 10, 2021 and February 4, 2021.

It makes no sense to claim that Defendant Richard ordered the cell phone search to "determine the source of the circulation" when GEO already had the press release. Dec. Richard, ¶¶ 20-22. Defendant Hook communicated with Defendant Richard, and provided her with the press release. Dec. Wash., ¶¶136-137. Defendants provide no evidence regarding Maria Richard's communications with Monica Hook.

When arguing the SF Bay View's reporting "did not have a causal nexus with BOP's discipline", Defendants ignore the SF Bay View's press release. Def. Opp., at 23. Furthermore, Malik attended the February 2 press conference and appeared on Flashpoints as the editor of the SF Bay View. Retaliation against Malik directly harms the SF Bay View, as discussed below.

## V.   Plaintiffs Will Suffer Irreparable Harm if an Injunction Does Not Issue

Most of the SF Bay View's articles are written by volunteers. There is nobody to cover any story which Malik cannot cover. Dec. Ratcliff, ¶¶ 51-52.

The SF Bay View made a loss of about $10,000 because Malik could not fundraise effectively. *Id.,* ¶ 57. If Malik were to lose his job or be transferred out of the Taylor Street Center, his skills as a fundraiser are not replaceable. *Id.*, ¶¶ 54-58. It is possible that the paper could collapse. *Id.,* ¶ 58. Most importantly, Mary Ratcliff would not be able to train her successor as the leader of a paper which has been a pillar of the Bayview-Hunters Point community for 45 years. *Id.,* ¶ 59.

## VI.   The Balance of Equities Weighs in Plaintiffs' Favor

Plaintiffs repeat their previous arguments on this point.

## VII.   Exhaustion Under the PLRA Does Not Apply

### A.   A Textual Exception to the PLRA's Exhaustion Requirement Applies

Plaintiffs did not claim that BOP's grievance procedure was "inherently unavailable". Def. Opp., at 13. As before, they assert that the "dead end" textual exception to PLRA exhaustion, *Ross v. Blake,* 136 S. Ct. 1850, 1859 (2016) applies.

The message of *Valentine v. Collier*, 140 S. Ct. 1598, 1600-01 (May 14, 2020) (Sotomayor, J., concurring) and 208 L. Ed. 2d 415, 418 (Nov. 16, 2020) (Sotomayor, J., dissenting) is that a grievance process functions as a dead end if it offers "no realistic prospect of relief", due to the fast-spreading nature of COVID-19, because "the PLRA 'cannot be understood as prohibiting judicial relief while inmates are dying.'" *Valentine,* 208 L. Ed. 2d at 417-19 (quoting *Valentine v. Collier*, No. 4:20-cv-1115, 2020 WL 3491999 (S.D. Tex. June 27, 2020).

When Malik acted to bring public attention to the COVID outbreak at the Taylor Street Center, he did not know what the scope of the outbreak was, or what precautions were being taken. Mary Ratcliff is 82 years old, and Willie Ratcliff is 88. ¶¶ 5-6. Whether Malik reported on or was a potential victim of a COVID outbreak does not change the fear that he and the SF Bay View experienced.

Malik has now filed a BP-10. Dec. Wash., ¶ 151.

**B.     PLRA Exhaustion Does Not Apply to the SF Bay View**

Plaintiffs repeat their previous arguments on this point.

**VI.     Scope of the Proposed Injunction Under the PLRA**

During the Case Management Conference on February 5, 2021, the Court requested briefing from both parties on the scope of an injunction under Fed. R. Civ. P. 65(d) and the PLRA. Accordingly, Plaintiffs have prepared a Proposed Order which they believe satisfies Rule 65(d) and the PLRA, which they submit with this Reply.

"The scope of [a] remedy must be no broader and no narrower than necessary to redress the injury shown by the plaintiff". *California v. Azar,* 911 F. 3d 558, 584 (9th Cir. 2018). An injunction based on First Amendment retaliation may enjoin

*Washington v. Federal Bureau of Prisons,* Case No. 4:21-cv-00787-JST
Plaintiffs' Reply to Defendants' Opposition to Application for TRO and/or PI - 14

future acts, however, if they are described with specificity. *Index Newspapers LLC v. United States Marshals Service*, 977 F. 3d 817, 842 n.3 (9th Cir. 2020) (O'Scannlain, J., dissenting) (terms of injunction).

The PLRA provides that a court granting an injunction must find "that the relief is narrowly drawn, extends no further than is necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(b)(2).

Plaintiffs' Proposed Order enjoins the discipline arising from the January 10/11 and February 4 disciplinary charges. These are specific harms shown by Plaintiffs. The future acts enjoined are specific violations which BOP alleges, the imposition of which would be unconstitutional. Imposing discipline would cause irreparable harm to Plaintiffs and disrupt the status quo. Such relief is narrowly drawn, since it extends to the specific harms alleged and no further, and is the least intrusive means since the injunction does not require continuous supervision of prison operations.

To the extent that prospective relief prevents BOP/GEO from imposing discipline or holding disciplinary hearings, such relief is prohibitory, and not mandatory.

## CONCLUSION

For the aforementioned reasons, the Court should grant Plaintiffs' motion.

Dated: February 23, 2021         **LAW OFFICES OF RICHARD TAN**

By: _____
Richard Tan
(Pronouns: he/him)

Attorney for Plaintiffs
KEITH H. WASHINGTON and SAN FRANCISCO BAY VIEW NATIONAL BLACK NEWSPAPER